[No. A083451. First Dist., Div. Three. June 29, 2001.]

ANDREW HOLMES et al., Plaintiffs and Respondents, v.
CALIFORNIA NATIONAL GUARD et al., Defendants and Appellants.

[No. A085180. First Dist., Div. Three. June 29, 2001.]

ANDREW HOLMES, Plaintiff and Appellant, v.
CALIFORNIA NATIONAL GUARD et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the part entitled "Attorney Fees."

300

## COUNSEL

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Todd E. Thompson, Anne-Marie Eileraas, Elizabeth W. Scott, Sherri A. Sokeland and Kimberly A. Bliss for Plaintiff and Appellant in No. A085180 and for Plaintiffs and Respondents in No. A083451.

Munger, Tolles & Olson, Jerome C. Roth, Hoojoon Hwang and John L. Flynn for Bay Area Lawyers for Individual Freedom as Amicus Curiae on behalf of Plaintiffs and Respondents in No. A083451.

Daniel E. Lungren and Bill Lockyer, Attorneys General, Martin H. Milas and David S. Chaney, Assistant Attorneys General, Damon M. Connolly, Miguel A. Neri, Kim M. Settles and Denis S. Kenny, Deputy Attorneys General, for Defendants and Appellants in No. A083451 and for Defendants and Respondents in No. A085180.

## OPINION

McGUINESS, P. J.—These consolidated appeals arise from a potential conflict between the equal protection and free speech guarantees of the California Constitution and the constraints imposed by preemptive federal law with respect to the policy based on sexual orientation known as "Don't Ask, Don't Tell" (the Policy), as applied to individuals on or eligible for state active duty in the California National Guard. The trial court below

declared California Army National Guard Regulation No. 600-1, paragraph 6(d) (hereinafter the Regulation) facially unconstitutional under the California Constitution insofar as it applies the Policy to individuals on state active duty employment in the California National Guard, or bars them from obtaining such state active duty employment if they have been discharged, separated or released from federal service under the Policy. The California National Guard, the State of California, Major General Tandy K. Bozeman and California Governor Gray Davis (collectively defendants) appeal from the judgment entered in favor of First Lieutenant Andrew Holmes (plaintiff), individually and on behalf of a class of persons similarly situated. Plaintiff in turn has appealed from the trial court's denial of his motion for attorney fees.

Contrary to the position of defendants, we hold that plaintiff does in fact have standing to challenge the constitutionality of the subject Regulation. Contrary to plaintiff, however, we agree with defendants that the trial court's rulings potentially conflict with preemptive federal law upholding the constitutionality of the Policy under the United States Constitution with respect to individuals serving in active duty positions in the National Guard for which federal recognition is required. In order to avoid possible encroachment on areas specifically preempted by federal law, we therefore remand the cause to the trial court with orders to modify its declaratory judgment so as to clearly limit the scope of its coverage to individuals seeking state active duty employment in positions *not* requiring federal recognition. In all other respects, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff enlisted in the California National Guard in 1986. He received a California state officer's commission on May 21, 1988, at which point he incurred an eight-year period of obligated state service. On March 28, 1990, he was sworn in and received a commission as an officer of the California National Guard. He thereafter received temporary federal recognition and was sworn in as an officer of the United States Army National Guard pursuant to title 32 of the United States Code section 308 (hereafter U.S.C.).[1] As a National Guard officer in a federally recognized unit, plaintiff was required by title 32 U.S.C. section 502(a) to assemble for drill and

---

[1]Title 32 U.S.C. section 308 provides in pertinent part: "(a) The Secretary of the Army may authorize the extension of temporary Federal recognition as an officer of the Army National Guard to any person who has passed the examination prescribed in section 307(b) of this title, pending his appointment as a reserve officer of the Army. . . . Temporary recognition so extended may be withdrawn at any time. If not sooner withdrawn or replaced by permanent recognition upon appointment as a reserve officer in the same grade, it terminates six months after its effective date. [¶] (b) To be eligible for temporary Federal recognition under subsection (a), a person must take an oath that during the period of temporary recognition he will perform his Federal duties as if he had been appointed as a reserve officer of the Army . . . ."

instruction 48 times each year, and participate in training at encampments, maneuvers, outdoor target practice and other exercises at least 15 days each year. As a member of a federally recognized United States Army National Guard unit, he received a federal paycheck and was subject to being called into the service of the United States.[2]

During the course of his service, plaintiff earned many honors, including promotion to first lieutenant and combat military police platoon leader. He received the Army Achievement Medal, the Army Reserve Components Achievement Medal and the National Defense Service Ribbon for superior performance while deployed to Germany in support of Operation Desert Shield and Operation Desert Storm. His California National Guard performance rating for the years 1993 to 1994 stated that plaintiff "is a dedicated

---

The term "federal recognition" is important to this case. It is defined in former title 32 of the Code of Federal Regulations, applicable to the United States National Guard, as follows: "Federal recognition means acknowledgment by the Federal Government that a person appointed to an authorized grade and position vacancy in the National Guard meets the prescribed Federal standards for such grade and position." (32 C.F.R. former § 1101.3(c)(1) (1959), superseded by redesignated pt. 564.3, eff. Dec. 29, 1961.) Although publication of this precise definition has been deemed unnecessary and redundant since 1978 because of its ongoing presence in applicable United States Code provisions and Army and Air Force regulations concerning the same subject (U.S. Dept. of the Army, Military Service Provisions, Miscellaneous Deletion [43 Fed.Feg. 26443 (June 20, 1978)]; 32 U.S.C. § 307(a),(d); Nat. Guard Reg. 36-1, ¶ 1(b) [Air Force]), the term continues in general use with the same meaning, and has been repeated so defined, employed and applied by the courts.

Thus, in *Frey v. State of Cal.* (9th Cir. 1993) 982 F.2d 399 (*Frey*), the Ninth Circuit Court of Appeal used almost identical language to define the term as follows: "Federal recognition is the acknowledgment by the Federal Government that an officer [of the state militia] appointed, promoted, or transferred to an authorized grade or position vacancy in the [United States] Army National Guard meets the prescribed laws and regulation governing the action. [¶] . . . The loss of federal recognition means that the officer no longer participates in federally-paid duty status, which includes activities such as drills, annual training, or service schools at any cost to the federal government, nor may he be called into active federal service." (*Frey, supra,* 982 F.2d at p. 400, fn. 3; see also *Holmes v. California Army National Guard* (9th Cir. 1997) 124 F.3d 1126, 1131, fn. 7 ["Federal recognition is the acknowledgement that an officer of a state national guard unit may become an officer of the United States Army National Guard and meets the requirements for holding such position"].) Based on this long history of accepted general usage, we adopt this language as the definition of the term "federal recognition," and as such it will be used for purposes of this opinion.

[2]The chronological record of plaintiff's National Guard service at first may appear somewhat confusing. Plaintiff's own declaration states that he was sworn in as an officer of the California Army National Guard in May 1988, and "thereafter" as an officer in the United States Army National Guard. According to defendants, plaintiff was sworn in as an officer in a federally recognized unit of the California National Guard in March 1990, and thereafter received temporary federal recognition as an officer in the Army National Guard of the United States. The explanation for this apparent confusion is the distinction between the California National Guard and the United States Army National Guard. Officers in the federally recognized National Guard have *two* commissions: one from the state, and the other as a reserve officer in the United States Army. Thus, plaintiff apparently received his *state* commission in May 1988, and his federal commission in March 1990.

officer who supports the commander in every respect," "is loyal to his troops in every respect," and "has the potential to become a fine staff officer." In addition, the performance review stated that plaintiff's "strong leadership style was exemplified by the outstanding performance of his platoon during annual training," which "was a shining example of cohesion."

Beginning in December 1991, plaintiff served on full-time active duty status commanding a California National Guard task force unit engaged in counternarcotics efforts requiring federal recognition. According to plaintiff's declaration, at that time he was receiving "pressure" from his commanding officer "to communicate to members of my unit that I was not homosexual." On or about June 3, 1993, plaintiff voluntarily sent a written memorandum to his commanding officer at the California National Guard, in which he stated: "[A]s a matter of conscience, honesty and pride, I am compelled to inform you that I am gay." Based on this memorandum, the commanding officer initiated a request to withdraw plaintiff's federal recognition as an officer in the United States Army National Guard.

On June 15, 1993, plaintiff received a memorandum informing him that his commanding officer was initiating a request to withdraw plaintiff's federal recognition because of his written statement acknowledging his homosexuality. On May 21, 1994, in accordance with the Policy, a federal recognition withdrawal board (the Board) was convened by the Sixth United States Army Commander, and commenced proceedings to determine if plaintiff's federal recognition should be withdrawn based on his June 3, 1993, memorandum.[3] Based on plaintiff's written acknowledgement of homosexuality, the Board found there was a rebuttable presumption plaintiff had engaged in homosexual conduct, which he had failed to rebut; and

---

[3]The Policy refers to the policy of the United States military, adopted in 1993, requiring the separation from federal military service of self-acknowledged homosexuals. As codified at 10 U.S.C. section 654, the Policy provides in pertinent part as follows: "(b) Policy.—A member of the armed forces shall be separated from the armed forces under regulations prescribed by the Secretary of Defense if one or more of the following findings is made and approved in accordance with procedures set forth in such regulations:

"(1) That the member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are further findings, made and approved in accordance with procedures set forth in such regulations, that the member has demonstrated that—

"(A) such conduct is a departure from the member's usual and customary behavior;

"(B) such conduct, under all the circumstances, is unlikely to recur;

"(C) such conduct was not accomplished by use of force, coercion, or intimidation;

"(D) under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and

"(E) the member does not have a propensity or intent to engage in homosexual acts.

"(2) That the member has stated that he or she is a homosexual or bisexual, or words to that effect, unless there is a further finding, made and approved in accordance with procedures set forth in the regulations, that the member has demonstrated that he or she is not a person who

recommended that his federal recognition be withdrawn pursuant to 10 U.S.C. section 654, 32 U.S.C. section 323 and 32 C.F.R. former section 1101.3(c). The Board's recommendation that plaintiff's federal recognition be withdrawn was approved by the Sixth United States Army Commander and the federal National Guard Bureau. By order of the Governor of California dated October 21, 1994, and as mandated by 32 U.S.C. section 324(a)(2), the California National Guard honorably discharged plaintiff from his federally recognized position, effective September 12, 1994.[4]

On January 3, 1995, plaintiff received notification from the National Guard Bureau of the termination of his employment with the United States Army National Guard of California, based on the withdrawal of his federal recognition. According to defendants, after the withdrawal of his federal recognition plaintiff reverted to his former reserve status and remained a state commissioned officer of the California State Military Reserve, pursuant to California Military and Veterans Code section 213, for the unexpired duration of the eight-year period of his obligated service—that is, until May 21, 1996. On the other hand, according to plaintiff's declaration, after notification of his honorable discharge he never received any further pay or communications of any kind from the California National Guard, was never informed that he retained his commission in the California National Guard, and was never told that he was eligible for any form of state active duty employment not requiring federal recognition.

In February 1995, plaintiff initiated the underlying litigation in federal district court against defendants as well as the United States Army National Guard, the Secretary of Defense and the United States. The original action

---

engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

"(3) That the member has married or attempted to marry a person known to be of the same biological sex. [¶] . . . [¶]

"(f) Definitions.—In this section: [¶] . . . [¶]

"(3) The term 'homosexual act' means—

"(A) any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and

"(B) any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in subparagraph (A)." (10 U.S.C. § 654(b), (f).)

[4]In pertinent part, 32 U.S.C. section 324 provides: "(a) An officer of the National Guard shall be discharged when—

"(1) he becomes 64 years of age; or

"(2) his Federal recognition is withdrawn."

As used in this provision, the term "National Guard" is specifically defined as "that part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive," that is "organized, armed, and equipped wholly or partly at Federal expense," and "federally recognized." (32 U.S.C. § 101(3), (4)(C) & (D).)

Thus, according to its own terms, this statute applies only to "that part" of a state's organized militia, i.e., National Guard, that satisfies a number of specifically *federal* requirements, including federal recognition.

challenged plaintiff's discharge from the California National Guard and the United States Army National Guard under the Policy, and sought damages as well as injunctive and declaratory relief based on the United States Constitution and California state law. The district court granted partial summary adjudication in favor of plaintiff on his federal equal protection and free speech claims against all defendants, and dismissed his remaining federal claims. (*Holmes v. California Army Nat. Guard* (N.D.Cal. 1996) 920 F.Supp. 1510, 1536-1537.)

On September 5, 1997, the Ninth Circuit Court of Appeals reversed the judgment, holding the Policy constitutional on its face and as applied to plaintiff's loss of federal recognition. (*Holmes v. California Army National Guard, supra,* 124 F.3d at pp. 1131-1137.) The federal appellate court also made the factual determination that after his October 1994 discharge from the United States Army National Guard and the January 1995 notification that he was being discharged from "the part of [the California National Guard] subject to being called into federal service, based solely on his loss of federal recognition," plaintiff retained and "currently holds an officer position in the state and United States reserve groups that does not require federal recognition and is not subject to being called into federal service." The Ninth Circuit did not reach the issue of whether the California state defendants could be held liable under California law for their application of the Policy against plaintiff. (*Id.* at pp. 1131, 1136.) Plaintiff's petition for review to the United States Supreme Court was denied. (*Holmes v. California Army National Guard* (1999) 525 U.S. 1067 [119 S.Ct. 794, 142 L.Ed.2d 657].)

Plaintiff filed the instant action in San Francisco Superior Court on May 27, 1997. The complaint, which was brought on behalf of plaintiff and "all persons similarly situated,"[5] alleged seven causes of action, entirely under California state law: (1) violation of equal protection under the California Constitution; (2) violation of freedom of speech under the California Constitution; (3) violation of the right to privacy under the California Constitution; (4) violation of the Labor Code; (5) violation of the Government Code; (6) violation of State of California Executive Order No. B-54-79 barring discrimination on the basis of sexual orientation in agencies of the state government under the jurisdiction of the Governor; and (7) wrongful discharge in violation of public policy. Defendants demurred on the grounds that, among other things, (a) plaintiff had not alleged that he was ever

---

[5]Paragraph 40 of the complaint alleged as follows: "Lt. Holmes brings this action on his own behalf, and on behalf of all persons similarly situated. The class Lt. Holmes represents consists of all past members of the California National Guard discharged after the effective date of the Policy on the basis of their sexual orientation or based on their loss of federal recognition premised on their sexual orientation. The class also includes all present homosexual and bisexual members of the California National Guard, all of whom risk discharge if their sexual orientation becomes known and whose conduct is subject to differential restrictions as a result of the California National Guard's application of the Policy."

discharged from his non-federally-recognized state commission in the California State Military Reserve; and (b) defendants' actions were preempted by the United States Constitution and federal law. The trial court overruled defendants' demurrer.

In February 1998, after answering the complaint, defendants filed a motion for summary judgment or summary adjudication, again arguing as before in connection with the demurrer that plaintiff had failed to allege and could not prove that he was discharged from his state commission, and that his claims were preempted by federal law. On May 19, 1998, the trial court denied defendants' motion for summary judgment, finding that "[t]riable issues of fact exist regarding disparate treatment" of plaintiff, and as a matter of law "[f]ederal law does not pre-empt Plaintiff's state law claims." In reference to evidence indicating the existence of triable issues, the trial court specifically cited the subject Regulation, upon which it would subsequently base its summary judgment in plaintiff's favor.[6]

Meanwhile, on May 1, 1998, plaintiff filed a motion for summary adjudication on his first and second causes of action, arguing that the Regulation was facially unconstitutional and in excess of defendants' authority because by barring individuals from serving in state active duty who have been discharged from federal service "for cause," it effectively prohibited acknowledged homosexuals from obtaining state active duty positions in violation of the equal protection and free speech guarantees of the California Constitution. In opposition, defendants argued that plaintiff lacked standing to attack the Regulation because (a) the only discharge he ever experienced was at the completion of his tour of temporary active duty special work on July 3, 1993, before his loss of federal recognition; (b) there was no evidence he had ever been released or discharged from federal or state active service "for cause"; and (c) "a withdrawal of federal recognition does not amount to a discharge from federal service."

After extensive argument at the hearing on plaintiff's motion, the trial court found no triable issues of material fact with regard to the following facts: (1) a withdrawal of federal recognition based on an individual's acknowledgement of his or her homosexuality results in a "for cause" discharge from federal service; (2) plaintiff's federal recognition was withdrawn based on his statement of his sexual orientation; (3) plaintiff's federal recognition was withdrawn "for cause"; (4) certain officers lacking federal

---

[6]Regulation No. 600-1, paragraph 6(d) states in pertinent part as follows: "All State Active Duty personnel are required to meet military medical standards and physical fitness standards appropriate for their branch of service, . . . meet military educational standards for their grade, must not have been convicted of a felony, and must not have been released from federal or state active duty for cause."

recognition may continue to serve on state active duty; (5) the Regulation prohibits individuals released from federal service "for cause" from obtaining state active duty employment; and (6) no officer whose federal recognition has been withdrawn "for cause" has ever subsequently served on state active duty. On this basis, the trial court granted plaintiff's motion for summary adjudication, finding as a matter of law that (1) the Regulation was "facially unconstitutional" because it prohibited homosexuals discharged from federal service under the Policy from obtaining state active duty employment and thereby (a) discriminated against homosexuals in violation of the equal protection clause of the California Constitution and (b) impermissibly burdened the exercise of homosexuals' rights to freedom of speech under the California Constitution; and (2) the Regulation was inconsistent with Military and Veterans Code section 101.[7]

Accordingly, the trial court issued a judgment that (1) declared the Regulation "facially unconstitutional and invalid to the extent that it prohibits individuals who have been discharged or released from federal service under the 'Don't Ask, Don't Tell' policy based on sexual orientation from obtaining State Active Duty employment," in violation of the equal protection and free speech guarantees of the California Constitution; (2) declared the Regulation invalid as "adopted in excess of [the California National Guard's] statutory authority"; (3) enjoined defendants from enforcing the Regulation "in a manner that prohibits individuals who have been discharged or released from federal service under the 'Don't Ask, Don't Tell' policy from obtaining State Active Duty employment"; (4) "enjoined and prohibited" defendants "from regarding, considering, or treating the separation from federal service of, or withdrawal of federal recognition from, individuals who have been separated or released from federal service under the [Policy] as 'for cause'"; and (5) "further ordered [defendants] to regard, consider, and treat the separation from federal service of, or withdrawal of federal recognition from, individuals who have been separated or released from federal service under the [Policy] as 'administrative,' thereby not affecting the individual's right to serve in state active service." In addition, the trial court granted plaintiff's motion for class certification and dismissed

---

[7]Military and Veterans Code section 101 provides: "All acts of the Congress of the United States relating to the control, administration, and government of the Army of the United States and the United States Air Force and relating to the control, administration, and government of the United States Navy, and all rules and regulations adopted by the United States for the government of the National Guard and Naval Reserve or Naval Militia, *so far as the same are not inconsistent with the rights reserved to this State and guaranteed under the Constitution of this State*, constitute the rules and regulations for the government of the militia." (Italics added.)

the remaining causes of action of plaintiff's complaint without prejudice.[8] Defendants' appeal in No. A083451 timely followed on July 2, 1998.

On August 13, 1998, plaintiff moved for an award of attorney fees and costs pursuant to Code of Civil Procedure section 1021.5 (hereafter section 1021.5) in an amount of approximately $405,156; or, in the alternative, an order declaring him the prevailing party under Code of Civil Procedure section 1032 for purposes of taxable costs. At the hearing on plaintiff's motion, the trial court expressed skepticism both about the amount of plaintiff's attorney fee request, and on the question whether there was a sufficiently large class of persons benefited by the judgment to justify an award of attorney fees under section 1021.5. After taking the matter under submission, the trial court entered a written order denying the motion on October 21, 1998. Instead, the trial court granted plaintiff's alternative motion for costs, and awarded plaintiff costs in the amount of $41,219. Plaintiff's separate appeal of this order timely followed in No. A085180.

## BACKGROUND AND NATURE OF THE NATIONAL GUARD

Because the complex relationship between the California National Guard and the United States National Guard is of central importance to this appeal, we first examine the background, history, and nature of the National Guard as an institution of federal and state government. Both traditionally and historically, the term "militia" is understood to refer to a part-time, nonprofessional fighting force. " 'Lexicographers and others define militia, and so the common understanding is, to be "a body of armed citizens trained to military duty, who may be called out in certain cases, but may not be kept on service like standing armies, in time of peace." . . . The men [and women] comprising [the active militia of a state] come from the body of the militia, and when not engaged at stated periods in drilling and other exercises, they return to their usual avocations, as is usual with militia, and are

---

[8]The trial court certified the following class: "All past members of the California National Guard discharged on the basis of their sexual orientation or based on their loss of federal recognition premised on their sexual orientation, as well as all present homosexual and bisexual members of the California National Guard, all of whom risk discharge if their sexual orientation becomes known." Upon plaintiff's motion, the trial court dispensed with class notification on the ground the subject class was seeking solely equitable relief, and was thus a type of class for which class notification was unnecessary. (Fed. Rules Civ.Proc., rule 23(b)(2), 28 U.S.C.; *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1608-1609 [277 Cal.Rptr. 583]; *Frazier v. City of Richmond* (1986) 184 Cal.App.3d 1491, 1501 [228 Cal.Rptr. 376].)

On September 18, 1998, after full briefing by the parties, we denied the defendants' petition for writ of mandate or prohibition seeking to overturn the trial court's order certifying the plaintiff class. On their present appeal in No. A083451, defendants have not raised any challenge to the propriety of the class certification.

subject to call when the public exigencies demand it.' [Citation.]" (*Perpich v. Department of Defense* (1990) 496 U.S. 334, 348 [110 S.Ct. 2418, 2426, 110 L.Ed.2d 312] (*Perpich*).)

Clauses 15 and 16 of article I, section 8 of the United States Constitution, known as the "Militia Clauses," grant to Congress the powers "[t]o provide for calling forth the militia to execute the laws of the union, suppress insurrections and repel invasions"; and "[t]o provide for organizing, arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States, reserving to the states respectively, the appointment of the officers, and the authority of training the militia according to the discipline prescribed by Congress." (U.S. Const., art. I, § 8, cls. 15, 16.) In accordance with this authorizing language in the federal Constitution, during the first decade of the 20th century Congress passed legislation creating an "organized militia" to be known as the National Guard of the several states. In response to concerns the National Guard could not be employed outside the borders of the United States, Congress subsequently enacted legislation providing for greater federal control and funding of the National Guard, and creating a dual enlistment system under which an individual enlisting in a state National Guard unit simultaneously enlists in the National Guard of the United States. (*Perpich, supra,* 496 U.S. at pp. 340-345 [110 S.Ct. at pp. 2422-2425].)

■ Thus, as presently constituted, the National Guard consists of " 'two overlapping, but legally distinct, organizations . . .' " —the federal, or United States National Guard, and the separate National Guards of the various individual states. (*Perpich, supra,* 496 U.S. at pp. 338, 345 [110 S.Ct. at pp. 2421, 2425].) In their capacity as members of the National Guard of the United States, individual members of the National Guard are part of the enlisted Reserve Corps of the Armed Forces of the United States. However, unless and until ordered to active duty in the Army, such individuals retain their status as members of separate state National Guard units. If and when ordered into active duty in the federal military service, members of the National Guard thereby lose their status in their respective state National Guards for the duration of their period of active federal military service. During their time of *federal* active duty, their state affiliation is suspended in favor of an entirely federal affiliation, and they are subject to all applicable laws and regulations of the United States military. Upon being relieved from federal active duty, such individuals then revert to their *state* National Guard status and duty. (10 U.S.C. §§ 101(d), 12107, 12201(a); 32 U.S.C. §§ 101(5) & (12), 102, 325(a); *Perpich, supra,* 496 U.S. at pp. 345-349 [110 S.Ct. at pp. 2425-2427]; *Gilliam v. Miller* (9th Cir. 1992) 973

F.2d 760, 763-764; *United States v. Dern* (D.C. Cir. 1934) 74 F.2d 485, 487 (*Dern*).)[9]

Notwithstanding periods of federal service, then, members of a state National Guard like that of California continue to satisfy the traditional understanding of a militia as a body of nonprofessional, part-time citizen soldiers " ' "who may be called out in certain cases, but may not be kept on service like standing armies, in time of peace." . . .' " (*Perpich, supra,* 496 U.S. at p. 348 [110 S.Ct. at p. 2426].) "In a sense, all of them now must keep three hats in their closets—a civilian hat, a state militia hat, and an army hat—only one of which is worn at any particular time. When the state militia hat is being worn, the 'drilling and other exercises' . . . are performed pursuant to 'the Authority of training the Militia according to the discipline prescribed by Congress,' but when that hat is replaced by the federal hat, the second Militia Clause is no longer applicable." (*Ibid.*) As long as individual members of the state National Guard are not on federal active duty, however, they retain their *state* affiliation, status and duties. (*Id.* at pp. 345-346, 348 [110 S.Ct. at pp. 2425-2426, 2427]; *Frey, supra,* 982 F.2d at pp. 403-404; *Gilliam v. Miller, supra,* 973 F.2d at pp. 763-764; *Dern, supra,* 74 F.2d at p. 487.)[10]

---

[9] "[I]t is clear that Congress, in carrying out its constitutional powers, had almost from the beginning provided by law for organizing, arming, and disciplining the militia, and that the process has been one of gradual enlargement, the United States assuming constantly increasing responsibility and exercising more and more control in organization and discipline, but it is clear notwithstanding all of this, that *except when employed in the service of the United States, officers of the National Guard continue to be officers of the state and not officers of the United States or of the Military Establishment of the United States.* And this limitation of power was always recognized by the Congress. *The United States has not appointed, and constitutionally cannot appoint or remove (except after being called into federal service), officers of the National Guard, for there must be a State National Guard before there can be a National Guard of the United States, and the primary duty of appointing the officers is one of the powers reserved to the states.* But while this is true, it is also true that Congress has authority to determine the extent of the aid, support, and assistance which shall be given the National Guard of the various states and the terms upon which it shall be granted. [Citation.] This flows from the power to organize, arm, and discipline. But, *except when employed in the service of the United States, the whole government of the militia is within the province of the state, and this follows because of the precise limitations of the constitutional grant.* The United States may organize, may arm, and may discipline, but all of this is in contemplation of, and preparation for, the time when the militia may be called into the national service. Until that event, the government of the militia is committed to the states. [Citation.] . . . *Nor is there any more doubt that Congress has the power to withhold federal recognition from all or any part of the militia in its discretion, or to impose the conditions of its acceptance.* This power is a necessary attribute of the constitutional grant." (*Dern, supra,* 74 F.2d at p. 487, italics added.)

[10] Congress has provided by statute that in addition to its state National Guard, an individual state may provide and maintain at its own expense a separate militia of its own, as a "defense force" for use within its own territorial limits and jurisdiction that may not be called, ordered

 The term "federal recognition" constitutes an "acknowledgement" by the federal government that a member of the state National Guard meets all the requirements for federal service and therefore qualifies and is eligible for a position in the United States National Guard. (*Holmes v. California Army National Guard, supra,* 124 F.3d at p. 1131, fn. 7; *Frey, supra,* 982 F.2d at p. 400, fn. 3.) It thus describes the condition or status of *eligibility* for service in federal active duty as a member of the United States National Guard. An officer or member of a state National Guard who has lost federal recognition can no longer be called into active federal service. Notwithstanding loss of federal recognition, however, such an individual may remain on state active duty and retain an officer position in state National Guard and United States reserve groups *not* requiring federal recognition and *not* subject to being called into federal service. (32 U.S.C. § 323(a); *Holmes v. California Army National Guard, supra,* 124 F.3d at p. 1131; *Frey, supra,* 982 F.2d at pp. 400-404 & fn. 3; *Dern, supra,* 74 F.2d at p. 487; Mil. & Vet. Code, §§ 120, 222.)[11]

At the outset, before addressing the issues raised on these consolidated cross-appeals, we first note what defendants do *not* contend on their appeal. First and foremost, they do not contest the key facts that under the Policy, a person's homosexual orientation is a basis for withdrawal of federal recognition and discharge from federal active service "for cause"; and that the subject Regulation bars from state active duty all individuals who have been released from federal active duty "for cause." From this concession, it necessarily follows that insofar as it incorporates the federal Policy, the Regulation excludes a class of persons from state active duty service on the basis of their sexual orientation. Similarly, defendants *do not contest* the trial court's determinations that: (a) to the extent the Regulation bars homosexuals from state active duty service in positions not requiring federal recognition, the Regulation thereby discriminates against such individuals in violation of the equal protection guarantees of the California Constitution; and (b)

---

or drafted into the Armed Forces of the United States. (32 U.S.C. § 109(c); *Perpich, supra,* 496 U.S. at pp. 351-352 [110 S.Ct. at pp. 2428-2429].) Thus, Congress has specifically granted the states authorization for the maintenance of purely state active duty positions that do not require federal recognition, and which may not be "federalized."

This statutorily authorized state defense force is separate and distinct from the state National Guard at issue in this case. In California, the separate state militia is called the State Military Reserve (SMR). Like the California National Guard, the SMR is part of the active state militia, but is "additional to and distinct from the National Guard." (Mil. & Vet. Code, §§ 120, 550 et seq.)

[11]Military and Veterans Code section 222 explicitly provides that the California National Guard may include persons who lack federal recognition. In pertinent part, the California statute provides as follows: "Persons to be commissioned in the National Guard shall be selected from those eligible for federal recognition . . . *and* from former commissioned officers of the United States Army, United States Air Force, United States Navy, or any reserve component thereof, who were honorably separated therefrom *but are no longer eligible for federal recognition.*" (*Ibid.,* italics added.)

by prohibiting an individual from serving on state active duty based on the individual's statement acknowledging his or her homosexuality, the Regulation is in violation of the free speech guarantees of the California Constitution. Finally, since our denial of their writ petition seeking to overturn the trial court's class certification order, the defendants have not raised any challenge to the propriety of the trial court's certification of the plaintiff class in this appeal.

## ADEQUACY OF PLAINTIFF'S PLEADINGS

In its judgment, the trial court declared the Regulation unconstitutional to the extent it bars individuals from obtaining state active duty employment if they have been discharged or released from federal service based on sexual orientation, and enjoined the California National Guard from prohibiting such individuals from obtaining state active duty employment. Defendants' initial contention is that the trial court erred in granting summary judgment on this basis because the issue of the Regulation was not raised by plaintiff in his original pleadings. To the extent this contention of defendants has not been waived, it is without merit.

Until this appeal, defendants never argued that plaintiff's complaint failed to plead any causes of action asserting the unconstitutionality of the Regulation. In opposing plaintiff's motion for summary adjudication, defendants argued only that plaintiff lacked standing to complain about the Regulation because he had assertedly not been released from either federal or state active duty "for cause." Not until now have defendants contended the trial court erred by basing its summary judgment on an issue allegedly not raised by plaintiff in his pleadings.

By failing to raise this issue before the trial court, defendants have waived their present argument. Defendants cannot rely upon a purported pleading defect that they had ample opportunity to raise below and which could easily have been cured. (*Wood v. Riverside General Hospital* (1994) 25 Cal.App.4th 1113, 1120 [31 Cal.Rptr.2d 8] [summary judgment for defendant affirmed based on issue not raised in complaint, where "no purpose would be served in returning the case to the court below only to have the pleadings amended and, thereafter to have a renewed motion for summary judgment granted"]; *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 385 [282 Cal.Rptr. 508] [plaintiffs' failure to challenge the sufficiency of pleadings in trial court treated as waiver of issue on appeal, where if pleadings had been challenged in trial court "it is likely that [defendants] would have been allowed to amend their [pleadings]"]; *Roybal v. University Ford* (1989) 207 Cal.App.3d 1080, 1087-1088 & fn. 6 [255

Cal.Rptr. 469] [summary judgment for defendant affirmed on basis of affirmative defense not raised in answer, where plaintiff waived challenge to sufficiency of answer by failing to raise the issue in opposition to summary judgment].)

In any event, the record shows that plaintiff did adequately raise the issue of the Regulation's constitutionality in his pleadings. The first and second causes of action of plaintiff's complaint alleged that defendants had violated plaintiff's constitutional rights to equal protection and freedom of speech by choosing to apply the federal Policy to state employees of the California National Guard. Subsequently, the nature of the Regulation and its connection to plaintiff's discharge from the California National Guard were explored in discovery. The existence of the Regulation was a principal basis for the trial court's denial of defendants' own earlier motion for summary judgment.

We are required to disregard any error or defect in the pleadings or proceedings which did not affect the substantial rights of the parties. (Code Civ. Proc., § 475.) On this record, defendants were on notice of the nature of plaintiff's claims and their connection with the Regulation. Certainly, once the trial court had—at least in part—based its denial of defendants' motion for summary judgment on the existence of the Regulation and its impact on plaintiff's employment in the National Guard, it was hardly a reach for plaintiff to argue that the Regulation itself was unconstitutional insofar as it had been used to apply the Policy to his state active duty employment. Any arguable defect in plaintiff's pleadings with regard to the Regulation was simply not prejudicial to the substantial rights of the defendants.

### PLAINTIFF'S STANDING TO CHALLENGE THE REGULATION

As noted, the one argument raised by defendants in opposition to plaintiff's motion for summary judgment was that of standing. On this appeal defendants again contend plaintiff lacked standing to challenge the Regulation because his active duty orders actually expired before his ultimate separation from the California National Guard; and therefore the Regulation technically did not apply to him because he was assertedly never released from federal or state *active duty* "for cause." As did the trial court, we reject defendants' argument as contrary to the record.[12]

■ As a general principle, standing to invoke the judicial process requires an actual justiciable controversy as to which the complainant has a

---

[12]We note that in opposing plaintiff's motion for summary adjudication, defendants made objections to *only five* of the 32 factual statements contained in plaintiff's "separate statement of undisputed material facts in support" of his motion. Among the many statements of material fact that defendants did *not* contest are the following: "On June 3, 1993, Lt. Holmes

real interest in the ultimate adjudication because he or she has either suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 169-172 [188 Cal.Rptr. 104, 655 P.2d 306]; *Municipal Court v. Superior Court* (1988) 202 Cal.App.3d 957, 960-964 [249 Cal.Rptr. 182]; *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 73-74, pp. 132-135.) To have standing, a party must be beneficially interested in the controversy; that is, he or she must have "some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].) The party must be able to demonstrate that he or she has some such beneficial interest that is concrete and actual, and not conjectural or hypothetical. A complaining party's demonstration that the subject of a particular challenge has the effect of infringing some constitutional or statutory right may qualify as a legitimate claim of beneficial interest sufficient to confer standing on that party. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361-363 [87 Cal.Rptr.2d 654, 981 P.2d 499].)

---

sent a memorandum to his commanding officer that stated, '[A]s a matter of conscience, honesty and pride, I am compelled to inform you that I am gay" (No. 3); "Shortly before writing the June 3, 1993 memorandum, Lt. Holmes' superior officers had pressured him to tell his platoon that he was not gay" (No. 4); "The California National Guard, at the request of Lt. Holmes' commander, initiated proceeding[s] to withdraw Lt. Holmes' federal recognition as a result of Lt. Holmes' June 3, 1993 memorandum" (No. 5); "Federal recognition may be lost for malfeasance, dereliction of duty, age, length of service in the Guard, and having a homosexual sexual orientation" (No. 15); "Withdrawal of an officer's federal recognition 'for cause' is equivalent to withdrawal of federal recognition based on malfeasance, immoral conduct, or dereliction of duty under U.S. Army Regulation 135-175, paragraphs 2-11 and 2-12" (No. 16); "Withdrawal of an officer's federal recognition 'administratively' occurs when an individual has completed 28 years of service or has retired" (No. 17); "Withdrawal of federal recognition based on an officer's statement of his homosexuality is 'for cause,' warranting a general discharge under honorable conditions" (No. 18); "Lt. Holmes' federal recognition was withdrawn 'for cause' " (No. 19); "No officer whose federal recognition has been withdrawn 'for cause' has ever subsequently served on State Active Duty, in a paid or volunteer status" (No. 20); "California Army National Guard regulation 600-1 requires that, to be eligible for service on State Active Duty, an individual must not have been released from federal or state active duty for cause" (No. 22); "No one has ever served on State Active Duty after stating that he or she has a homosexual orientation" (No. 24); "None of the officers currently serving on State Active Duty has ever stated that he or she is homosexual" (No. 25); and "The California National Guard never informed Lt. Holmes that he was transferred to the State Military Reserve" (No. 26).

Significantly, these *undisputed* material facts correspond closely to the trial court's own statement of "issues as to which no triable issues of material fact exist," on the basis of which it granted plaintiff's motion for summary adjudication.

In this case, defendants argue the term "federal active duty" is limited by federal statute to "full-time duty in the active military service of the United States," and "does not include full-time National Guard duty," i.e., the kind of active duty service performed by plaintiff. (10 U.S.C. § 101(d)(1); 32 U.S.C. § 101(12).) Thus, because he was obviously serving in the California National Guard, defendants argue that plaintiff's service did not fit within the federal statutory definition of federal military "active duty" as that term is used in the Regulation at issue.

Second, defendants contend the temporary self-executing orders under which plaintiff was serving at the time his sexual orientation became known and the discharge proceedings were commenced against him under the Policy expired of their own accord on July 3, 1993. This was well before the National Guard had actually completed its discharge proceedings, at which point plaintiff's federal recognition was withdrawn and the California National Guard honorably discharged him from his federally recognized position, effective September 12, 1994. Thus, defendants contend, plaintiff's temporary tour of federal active duty simply came to the end of its predetermined term, rather than being terminated for cause under the Policy or the Regulation.

Finally, defendants maintain plaintiff never applied for and was never placed on "state active duty." Because the specific federal service plaintiff was performing on the California National Guard counternarcotics task force was governed by United States Army regulations and was not considered state active duty, defendants insist plaintiff could not have been "released . . . for cause" from *state* "active duty."

In their effort effectively to read plaintiff out of the ambit of the subject Regulation, defendants offer a strained and hypertechnical reading thereof, using unrealistically narrow definitions of key terms as a result of which plaintiff's National Guard service would qualify as *neither* federal *nor* state "active duty." Defendants' position does not bear close scrutiny. In the first place, the federal statutory definition of "active duty" cited by defendants from the United States Code is not referenced by the Regulation itself, or by any other California statutes or regulations in connection therewith. Defendants have not provided any evidence that the state drafters of the Regulation intended the definitions of "active duty" set out in 10 U.S.C. section 101(d)(1) and 32 U.S.C. section 101(12) to apply to the Regulation or limit its scope. Indeed, 32 U.S.C. section 101 specifically provides that various definitions set out in title 32 *only* "apply in this title" of the United States Code.

Moreover, the "full-time National Guard duty" *excluded* from the definition of "active duty" in the federal statutes cited by defendants is in turn

itself defined by the same federal statutes as "duty, other than inactive duty, performed by a member of the Army National Guard of the United States . . . in the member's status as a member of the National Guard *of a State* . . . for which the member is entitled to pay from the United States . . . ." (10 U.S.C. § 101(d)(5); 32 U.S.C. § 101(19), italics added.) In other words, the full-time National Guard duty excluded from the definition of *federal* active duty is *state* active duty in the National Guard. This is fully consistent with the fact that until they are called into active federal service, the various state National Guards are governed not by the federal government, but by the individual states. (U.S. Const., art. I, § 8, cls. 15, 16; *Perpich, supra,* 496 U.S. at pp. 338-349 [110 S.Ct. at pp. 2421-2427]; *Frey, supra,* 982 F.2d at pp. 403-404; *Gilliam v. Miller, supra,* 973 F.2d at pp. 763-764; *Dern, supra,* 74 F.2d at p. 487.) There is nothing in the record suggesting the cited federal statutes narrow the definition of *state* active duty. The record is replete with admissions by National Guard personnel that plaintiff was serving on "active duty." Thus, assuming for the sake of argument that the cited federal statutes are controlling here, plaintiff's service in the counternarcotics task force would nevertheless qualify as *state* "active duty" funded by the federal government but authorized, organized, implemented and administered by the state. (32 U.S.C. § 112(a), (c); Mil. & Vet. Code, § 142.)

■ Perhaps the most serious problem with defendants' strained, hyper-technical reading of the Regulation is that it conflicts with the way the Regulation is applied in actual practice. The Regulation must be given "a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature." (*DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722], overruled on other grounds in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 15 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) On its face, the Regulation displays the manifest intent to preclude individuals released for cause from subsequently serving on state active duty. Under defendants' artificial reading of the Regulation, however, only those individuals released "for cause" from active duty as very narrowly defined by defendants would be excluded from future state active duty; individuals who were discharged or released from federal or state *reserve* duty on the basis of identical "for cause" grounds would, on the other hand, be perfectly welcome to serve on state active duty. Hypothetically, homosexuals released for cause from active United States Army duty would be categorically barred from future state active duty, at the same time persons released for cause from the United States Army Reserve would be welcome to apply for state active duty no matter what the reasons for their separation.

Nor is there merit to defendants' reliance upon the chronology of plaintiff's self-executing discharge in July 1993 from his temporary active duty in

the California National Guard counternarcotics task force, before the completion of the ongoing proceedings to withdraw his federal recognition. The fact that plaintiff's temporary tour of duty actually expired during the processing of the withdrawal of his federal recognition and before his ultimate discharge from his federally recognized position cannot change or obscure the undisputed facts of this case. Based entirely on plaintiff's written acknowledgement of homosexuality, plaintiff's superiors in the California National Guard undertook proceedings to withdraw his federal recognition and ultimately did so, which directly resulted in both his October 1994 discharge for cause by the United States Army National Guard from his federally recognized position and his subsequent January 1995 discharge from that part of the California National Guard subject to being called into federal service. As defendants either acknowledged or failed to dispute below, the withdrawal of plaintiff's federal recognition and subsequent release from his National Guard position based on the Policy constituted a release from active duty *for cause* which, under the Regulation, made him *ineligible* for state active duty service.

On this record, we conclude plaintiff had standing to bring his challenge to the Regulation under the California Constitution. Certainly plaintiff demonstrated below that the Regulation could have the effect of infringing his rights under the California Constitution to equal protection, freedom of association, and freedom of expression. We therefore hold plaintiff asserted a legitimate beneficial interest sufficient to state a justiciable controversy and confer standing to challenge the constitutionality of the Regulation. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com., supra,* 21 Cal.4th at pp. 361-363.)

### FEDERAL PREEMPTION

Defendants' principal substantive contention is that the trial court's judgment and injunctions—which bar enforcement of the Regulation in a manner that prohibits individuals discharged or released from federal service under the Policy from serving on state active duty—are themselves preempted by federal constitutional, statutory and regulatory law. Defendants contend that although "[c]ertain positions" within the California National Guard "are tied to positions in the National Guard of the United States," and "[s]ome state active duty positions require federal recognition" and are "subject to being activated for federal service," "[t]he trial court essentially held that an individual with no federal recognition can hold a state active duty position which requires federal recognition," and even "order[ed] the [California National Guard] to place individuals without federal recognition into state active duty positions that require federal recognition." Defendants

# NOTICE TO SUBSCRIBERS

With the publication of this volume, 90 Cal.App.4th, all advance sheets through 2001, No. 19 should be discarded.

urge that the trial court's judgment was clearly erroneous on grounds of the historic federal preemption of the entire field covering the organization, disciplining and governing of the militia, more commonly known as the National Guard.

While we disagree with some aspects of defendants' characterization of the trial court's judgment and injunctions, we must agree that the trial court's ruling is open to possible misinterpretation in ways which could lead its injunctions to encroach on areas clearly preempted by federal law. In order to avoid such potentially serious pitfalls of misinterpretation, we therefore hold that the language and scope of the trial court's rulings must be explicitly limited to providing and securing equal access, without regard to sexual orientation, to employment and service in state active duty positions *not requiring federal recognition.*

At the outset, we reject plaintiff's assertion that defendants have waived this contention because they failed to raise it in opposition to plaintiff's motion for summary adjudication and then allegedly "consented" to the form of the trial court's injunction. In fact, defendants unambiguously raised the issue of federal preemption at least twice in the trial court: first, by way of demurrer; and second, in their own motion for summary judgment. In their demurrer to plaintiff's complaint, defendants argued, as they do here, that any challenge to their actions in discharging plaintiff from his federally recognized position was preempted by the Militia Clauses and applicable federal statutes. In their motion for summary judgment, defendants again argued that their actions in discharging plaintiff were required by federal law, and that any claims regarding the application of federal recognition standards to National Guard service positions were preempted by federal constitutional and statutory law. These arguments were opposed by plaintiff, and expressly rejected by the trial court prior to the summary adjudication motion that is the subject of this appeal. On this record, the issue of preemption was squarely before the trial court, and has therefore not been waived.[13]

---

[13]Almost incidentally, defendants also contend that the trial court's judgment should be reversed because "it directly interferes with military policy and decision-making," in violation of the traditional deference of the courts "to the special function of the military in our constitutional structure and in the system of national defense." Unlike their preemption argument, defendants never raised or asserted this contention below. As plaintiff convincingly argues in his responding brief in appeal No. A083451, defendants' passing reference to this argument in their opening brief on appeal fails to demonstrate that the alleged principle is applicable to the facts of this case, and is in any event amply refuted by substantial appellate law declining to defer to the military on issues of unconstitutional discrimination or discharge. (See *Emory v. Secretary of Navy* (D.C. Cir. 1987) 819 F.2d 291, 294; *Dillard v. Brown* (3d Cir. 1981) 652 F.2d 316, 319-322; *Dep't of Military and Vet. Affairs v. Bowen* (Alaska

■ The preemption doctrine derives from the supremacy clause of the United States Constitution, which declares in pertinent part that the Constitution and laws of the United States "shall be the supreme law of the land," binding on the judges of every state notwithstanding anything to the contrary in the constitutions or laws of the several states. (U.S. Const., art. VI, § 2.)[14] Since the decision in *McCulloch v. Maryland* (1819) 17 U.S. 316, 427 [4 L.Ed. 579, 606-607], "it has been settled that state law that conflicts with federal law is 'without effect.' " (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [112 S.Ct. 2608, 2617, 120 L.Ed.2d 407] (*Cipollone*).) Whether federal law preempts state law "fundamentally is a question of congressional intent." (*English v. General Electric Co.* (1990) 496 U.S. 72, 79 [110 S.Ct. 2270, 2275, 110 L.Ed.2d 65]; see also *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 568 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *Smiley v. Citibank* (1995) 11 Cal.4th 138, 147-148 [44 Cal.Rptr.2d 441, 900 P.2d 690]; *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1066 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

In addressing any question of preemption, we start with the presumption that the historic police powers of the states are not to be preempted or superseded by federal law unless there is a " 'clear and manifest purpose' " on the part of Congress to do so. (*Cipollone, supra,* 505 U.S. at p. 516 [112 S.Ct. at p. 2617]; *Smiley v. Citibank, supra,* 11 Cal.4th at p. 148.) Preemption is found in three circumstances. First, Congress can explicitly define the extent to which its specific enactments are intended to preempt state law. Second, in the absence of such explicit statutory language, state law is preempted where it regulates conduct or activities in a field that Congress clearly intended the federal government to occupy exclusively. Third, state law is preempted to the extent it actually conflicts with federal law. (*Cipollone, supra,* 505 U.S. at p. 516 [112 S.Ct. at p. 2617]; *English v. General Electric Co., supra,* 496 U.S. at pp. 78-79 [110 S.Ct. at pp. 2274-2275]; *Smiley v. Citibank, supra,* 11 Cal.4th at pp. 147-148.)

■ Here, defendants argue that under the Militia Clauses, Congress has plenary power over the National Guard. They rely on the provisions of the United States Constitution expressly vesting Congress *alone* with the powers "[t]o provide for calling forth the militia to execute the laws of the union, suppress insurrections and repel invasions," and "[t]o provide for organizing,

---

1998) 953 P.2d 888, 895-896.) On the record before us, we consider defendants to have waived this particular argument.

[14]United States Constitution, article VI, section 2 provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."

arming, and disciplining the militia, and for governing such part of them as may be employed in the service of the United States." (U.S. Const., art. I, § 8, cls. 15, 16.) Defendants urge that despite the Militia Clauses' reservation to the states of some authority over militias, specifically with regard to the appointment of officers and actual training prior to active duty in federal service, even this authority is subject to limitations "*according to the discipline prescribed by Congress.*" (*Ibid.*, italics added.) Based on this language of the federal Constitution, the subsequent congressional statutes establishing the National Guard, and the controlling judicial interpretation of those constitutional and statutory provisions, defendants argue Congress has assumed preemptive authority over the governance of the National Guard, at least when employed in the service of the United States. On this ground, defendants maintain they are *compelled* by federal law to apply the Policy to certain state active duty positions requiring federal recognition; and, as written, the trial court's judgment improperly infringes on this preemptive federal mandate.

Defendants' analysis of controlling federal law is largely accurate. (See generally *Perpich, supra,* 496 U.S. at pp. 349-354 [110 S.Ct. at pp. 2427-2430].) ▆▆ It is true that individuals lacking federal recognition may serve in purely state active duty positions, consistent with the Militia Clauses' reservation to the states of power over the appointment of officers to state militias. (*Frey, supra,* 982 F.2d at pp. 400-404; *Gilliam v. Miller, supra,* 973 F.2d at pp. 763-764.) As defendants correctly point out, however, federal recognition is required for any federal service, including that which may overlap with state service. Thus, although loss of federal recognition does not bar an individual from employment in a state active duty position, whenever federal recognition is still required a state cannot dispense with the congressionally imposed requirements for such status without encroaching on a field preempted by federal constitutional and statutory law. (*Perpich, supra,* 496 U.S. at pp. 349-354 [110 S.Ct. at pp. 2427-2430]; *Frey, supra,* 982 F.2d at pp. 400, 403-404.) ▆▆ Defendants argue this is precisely what the trial court has done in this case, by entering an overbroad judgment that, as written, potentially imposes state nondiscrimination requirements on California National Guard service positions requiring federal recognition and, as such, governed by federal law.

We must disagree with defendants' assertions that the trial court *specifically* ruled that "individuals without federal recognition can serve in state active duty positions which require federal recognition," and even "order[ed] the [California National Guard] to place individuals without federal recognition into state active duty positions that require federal recognition." On its face, the trial court's judgment declared the Regulation unconstitutional "to

the extent" it had the effect of prohibiting individuals discharged or released from federal service based on the Policy from obtaining *state* active duty employment; and enjoined defendants from applying the Regulation or the Policy to bar such individuals from obtaining or serving on *state* active duty positions only. There is nothing in the record indicating the trial court *intended* its judgment to require defendants to allow individuals lacking federal recognition to serve in state active duty positions requiring such federal recognition.

By the same token, however, the language of the trial court's judgment as it stands does not clearly *exclude* the interpretation asserted by defendants. Thus, as written, the trial court's judgment does not make any exception for positions coming within the definition of state active duty employment or service that may yet be tied to potential federal service in the United States National Guard for which federal recognition *is* required; nor are the injunctions clearly limited to providing homosexuals with equal access to state active duty positions that *do not require* federal recognition. As such, in actual practice the trial court's judgment and injunctions *could* be read as creating a potential conflict between enforcement of state law and the federal Policy, at least in those instances in which there may be an overlap between state active duty service and federal service requiring federal recognition. Unless the trial court's judgment is clarified, defendants could be put in the untenable position of having to allow individuals to obtain state active duty positions for which federal recognition is required even though they may have lost or be ineligible for federal recognition because of the Policy.

To resolve this potential conflict, we conclude the trial court must clarify its judgment with language clearly and unambiguously limiting its scope to employment in state active duty positions "that do not require federal recognition." If such limiting language is added to the operative provisions of the trial court's judgment, including the declaration of unconstitutionality and each of the three subsequent injunctive paragraphs, the scope of the judgment would clearly be restricted to purely state action, conduct and activities not in danger of preemption by superceding federal law.[15] We therefore remand this cause to the trial court for it to modify its judgment, including each of the operative paragraphs thereof, so as to clarify that it is limited to state active duty employment *that does not require federal recognition.*

---

[15]We note that defendants have expressly conceded that if such a limitation were to be included in the trial court's judgment and injunctive relief orders, "preemption would not apply."

ATTORNEY FEES*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The cause is remanded to the trial court for modification of the judgment, including the injunctions contained therein, so as clearly and expressly to limit their scope to protecting the rights of homosexuals to state active duty employment in the California National Guard not requiring federal recognition.

In all other respects, both the judgment and the order denying an award of attorney fees to plaintiff under section 1021.5 are affirmed. Each side shall bear its own costs on appeal.

Corrigan, J., and Parrilli, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied October 17, 2001.

---

*See footnote, *ante*, page 297.