Filed 5/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT DIRAFFAEL, | B284859 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS144419) |
| v. | |
| CALIFORNIA ARMY NATIONAL GUARD, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Mary H. Strobel, Judge.  Affirmed.

Robert DiRaffael, in pro. per., for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Kenneth C. Jones and Eric Fox, Deputy Attorneys General, for Defendants and Respondents.

————————————————

Plaintiff and appellant Robert DiRaffael, appearing in propria persona, appeals from the denial of his petition for a writ of mandate directing the California Army National Guard (CAARNG) to vacate an order separating appellant, a commissioned officer, from CAARNG. Defendants and respondents are CAARNG and four individuals named in appellant's petition: David S. Baldwin, California's Adjutant General; Lawrence A. Haskins, commander of CAARNG; and John D. Ford and Dwight D. Stirling, two officers in CAARNG who purportedly reviewed and supervised the issuance of the separation order.

CAARNG ordered appellant separated pursuant to federal regulations governing selective retention of National Guard officers after 20 years of service. Appellant argued in his writ petition that the United States Constitution reserved to the states the right to appoint and terminate the appointments of state National Guard officers, and therefore CAARNG could not rely on federal regulations to separate him. The trial court found that state law incorporated the applicable federal regulations via provisions of the Military and Veterans Code, and thus CAARNG properly could invoke them to separate appellant.

Appellant argues that the trial court erred because (1) the United States Constitution prohibits the Legislature from incorporating the federal regulatory provisions under which CAARNG separated appellant and (2) even if the Legislature could incorporate those provisions, it has not done so. We reject both propositions. We further hold that appellant's claims of purported procedural and evidentiary errors by the trial court lack merit. Accordingly, we affirm the judgment.

2

## FACTUAL BACKGROUND

Appellant served as a lieutenant in CAARNG. In September 2012 he received a letter sent on behalf of the Chief of the federal National Guard Bureau notifying him that, having completed 20 years of required service,[1] he was eligible for retired pay upon application at age 60.

On April 30, 2013, Respondent Haskins issued an order appointing an "Officer Selective Retention Board" pursuant to National Guard Regulation (NGR) No. 635–102, a federal regulation. The order stated that "[t]he purpose of the Board is to recommend qualified officers, who have 20 years of qualifying service for retired pay at age 60, for continued unit participation in the California Army National Guard."

In July 2013, appellant was served with a memorandum signed by Haskins "for the Adjutant General." (Capitalization omitted.) The memorandum stated that appellant was "considered for retention in accordance with NGR 635–102 and unfortunately, you were not selected for retention in the California Army National Guard. NGR 635–102 provides that an officer who is considered for retention and is not selected will be separated from the Army National Guard. Accordingly, you will be separated with an effective date of 30 September 2013." The memorandum stated it was appellant's "responsibility to elect membership in either the Retired Reserve or the Individual Ready Reserve (IRR) of the United States Army Reserve (USAR) upon discharge from the California Army National Guard."

---

[1] Those 20 years included four years served in the Alaska Army National Guard.

Appellant received an "Acknowledgement of Receipt" (boldface omitted) that requested he select one of the two reserve options listed in Haskins's memorandum. Rather than selecting either option, however, appellant wrote "[t]his action was not taken in accordance with NGR 635–102 or relevant law," and "I opt to stay a member of the CAARNG."

CAARNG served appellant with an order, dated September 10, 2013 stating, "You are separated from the Army National Guard on [September 30, 2013] and assigned as indicated on date immediately following." The order further stated, "Upon termination of federal recognition officer becomes a member of USAR under provisions of Title 10 U.S. Code 12213." The order listed a "[r]eserve obligation" dated February 28, 2014. The order stated that it was "by order of the Governor" (some capitalization omitted), and bore the stamp of the Military Department. The order cited as authority "Para 5a(8) NGR 635–100." NGR No. 635–100 is a federal regulation stating that "[u]nless contrary to State law and regulations, the appointment of an Army National Guard officer should be terminated" for specified reasons (NGR No. 635–100, subd. (5)(a)), including "[u]pon [the officer] becoming a member of the Army Reserve" (*id.*, subd. (5)(a)(8)).

## PROCEDURAL HISTORY

Appellant filed a petition for a writ of mandate under Code of Civil Procedure sections 1085 and 1094.5, naming respondents. Appellant contended that separating him from CAARNG "based on the recommendation of a Federal Selective Retention Board . . . contravenes the applicable laws and policies of the State of California." Appellant claimed that "the sole process by which a [California National Guard] officer may be

4

involuntarily discharged through administrative separation for non-medical reasons is through a board convened pursuant to [Military and Veterans] Code § 234." Appellant invoked article I, section 8, clause 16 of the United States Constitution, which "reserv[es] to the States respectively, the Appointment of the Officers" of the state militia. Appellant argued that, even accepting that the federal board had removed his eligibility for federal service, he remained eligible for state service under California law. Appellant prayed for a writ of mandate ordering respondents to vacate the memorandum signed by Haskins notifying him of his separation.

The petition specified that appellant "d[id] not request [the trial court] to subject the [federal selective retention board] to direct review," and described the board as "a Federal entity composed of Federal officers who act under Federal authority exclusively." The petition stated that appellant was in the process of exhausting his federal administrative remedies in anticipation of filing a separate action in federal court to challenge "withdrawal of my Federal Recognition by the National Guard Bureau . . . of the United States Department of Defense."

Respondent Baldwin filed a notice of removal to federal district court. After more than a year with no action by appellant, the federal court granted an unopposed motion to dismiss the case for lack of prosecution. Appellant responded with a motion to alter or amend judgment that, among other things, challenged the federal court's jurisdiction. The federal court concluded that appellant's petition indicated "an intent to sue solely as to the state law question of whether separation from CAARNG was procedurally proper, and *not* to sue as to Major General Baldwin's acts under the authority of federal law." On

5

this basis the federal court found it lacked jurisdiction, vacated its dismissal order, and remanded the case to the trial court.

After remand and briefing, the trial court conducted a hearing on the petition. The trial court issued a tentative decision and ordered supplemental briefing on several issues, including whether appellant could serve in CAARNG absent federal recognition, the applicability of the governor's authority to transfer and reassign California National Guard members under Military and Veterans Code section 239, and whether the *Feres*[2] doctrine barred appellant's petition.

After the parties submitted their supplemental briefs, the trial court held a second hearing at which it ordered additional briefing on due process, specifically whether appellant received adequate notice of the selection retention proceeding.

After receiving the additional briefing, the trial court issued a written decision denying the writ. As an initial matter, the trial court found that a writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5 was inapplicable because the selective retention process under NGR No. 635–102 did not provide for an evidentiary hearing. The trial court therefore assessed whether the petition stated grounds for a writ of mandate under Code of Civil Procedure section 1085.

The trial court found that "the power to appoint and terminate a state National Guard officer is held by the state," and acknowledged that appellant had been separated under the authority of federal regulations. The trial court found, however, that provisions of the Military and Veterans Code, including

---

[2] *Feres v. United States* (1950) 340 U.S. 135 (*Feres*).

6

sections 100 and 101, "specifically incorporate[ ] federal law and regulations" " 'so far as the same are not inconsistent with the rights reserved to this State and guaranteed under the Constitution of this State.' " (Quoting Mil. & Vet. Code, § 101 boldface and italics omitted.) The trial court determined the relevant inquiry was whether the applicable federal regulations, NGR Nos. 635–100 and 635–102, as applied to appellant, were inconsistent with the rights reserved to California and guaranteed under its Constitution, in which case they would not be incorporated into state law and could not serve as a basis to separate appellant from CAARNG.

The trial court then compared various provisions of the Military and Veterans Code to the federal regulations as applied to appellant and found no inconsistency. The trial court further found appellant's cited authorities inapposite. The trial court therefore deemed the provisions of NGR Nos. 635–100 and 635–102 as applied to appellant incorporated into state law and an adequate basis to order appellant's separation from CAARNG.

On the due process question, the trial court concluded that, while appellant was entitled to notice of the federal selective retention proceeding, there was no requirement that CAARNG further notify him before separating him from the state National Guard as a result of that federal proceeding. Thus, CAARNG did not violate appellant's right to due process.[3]

Finally, the trial court ruled that the *Feres* doctrine did not bar its review, because appellant was challenging the procedure under which he was separated, not the substantive decision to

_____

[3] On appeal, plaintiff does not challenge the trial court's conclusion regarding due process.

7

separate him, and therefore the writ petition "would not necessarily implicate military reasoning or judgment."

Appellant moved for reconsideration. The trial court denied the motion, concluding appellant had failed to present new law or evidence, and to the extent any of his arguments were new, he had not shown reasonable diligence excusing his failure to raise them earlier. The trial court also declined to reconsider its order sua sponte.

The trial court entered judgment denying the petition. Appellant timely appealed from the judgment and the order denying his motion for reconsideration.[4]

## STANDARD OF REVIEW

A writ of mandate under Code of Civil Procedure section 1085 " 'may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .' " (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 (*Kavanaugh*).) To prevail, petitioner must show CAARNG "has a clear, present and ministerial duty" to vacate its order of separation and that petitioner "has a clear, present and beneficial right to performance of that duty entitling [him] to a writ of mandate." (*Ibid.*) We assume for purposes of this appeal that a writ under Code of Civil Procedure section 1085 is the proper mechanism for the relief appellant

---

[4] In his appellate briefing, plaintiff does not challenge the trial court's conclusion that he failed to show a basis for reconsideration. We deem that issue abandoned. (*Lafferty v. Wells Fargo Bank, N.A.* (2018) 25 Cal.App.5th 398, 428.)

seeks; appellant does not challenge the trial court's conclusion that a writ under Code of Civil Procedure section 1094.5 is inapplicable.

In reviewing the trial court's decision to deny the writ, we defer to any factual determinations if supported by substantial evidence and review legal determinations de novo. (*Kavanaugh*, *supra*, 29 Cal.4th at p. 916.)

## OVERVIEW OF THE NATIONAL GUARD AND APPLICABLE REGULATIONS

### A. Organization of the National Guard

"The National Guard is an unusual military force because it serves both as the militias for the 50 states, the District of Columbia, Puerto Rico, Guam, and the American Virgin Islands, and as the reserve force for the United States Army and Air Force. 'The [National] Guard occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns. In each state the National Guard is a state agency, under state authority and control. At the same time, federal law accounts, to a significant extent, for the composition and function of the Guard.' " (*Stirling v. Brown* (2018) 18 Cal.App.5th 1144, 1151 (*Stirling*), alteration in original.)

"The Governor and his or her appointee, the Adjutant General, command the National Guard in each state." (*Stirling*, *supra*, 18 Cal.App.5th at p. 1151.) In California, the Adjutant General is the head of the Military Department, which includes, among other things, the California National Guard and the State Military Reserve. (Mil. & Vet. Code, §§ 51, 52.) The California National Guard encompasses both the California Army National

Guard and the California Air National Guard.  (See *https://calguard.ca.gov/join/*, as of May 13, 2019.)

"[A]s presently constituted, the National Guard consists of ' "two overlapping, but legally distinct, organizations . . ." '—the federal, or United States National Guard, and the separate National Guards of the various individual states."  (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 310 (*Holmes*).)

"All persons enlisting in a state National Guard/militia simultaneously enlist in the United States National Guard."  (*Stirling*, *supra*, 18 Cal.App.5th at p. 1151.)  "In their capacity as members of the National Guard of the United States, individual members of the National Guard are part of the enlisted Reserve Corps of the Armed Forces of the United States.  However, unless and until ordered to active duty in the Army, such individuals retain their status as members of separate state National Guard units."  (*Holmes*, *supra*, 90 Cal.App.4th at p. 310.)

When not serving in federal active duty, state National Guard members may serve in one of two statuses.  They may serve in a "hybrid" status in which they "operate[ ] under state active duty and under state control but in the service of the federal government."  (*Stirling*, *supra*, 18 Cal.App.5th at p. 1153.)  In this capacity, " 'National Guard members are under the command and control of the state and thus in a state status, but are paid with federal funds.' "  (*Ibid.*, quoting NGR No. 500–5, § 10–3(a).)  Alternatively, National Guard members may serve in pure state active duty status, " 'under state control for state purposes and at state expense as provided in the state's constitution and statutes.' "  (*Stirling*, at p. 1152, quoting NGR No. 500–5, § 10–2.)

10

To serve either in federal active duty or under command and control of the state but paid with federal funds, a National Guard member must receive " 'federal recognition,' " which is "an 'acknowledgement' by the federal government" that the member "meets all the requirements for federal service and therefore qualifies and is eligible for a position in the United States National Guard." (*Holmes*, *supra*, 90 Cal.App.4th at p. 312.) "An officer or member of a state National Guard who has lost federal recognition can no longer be called into active federal service. Notwithstanding loss of federal recognition, however, such an individual may remain on state active duty and retain an officer position in state National Guard and United States reserve groups *not* requiring federal recognition and *not* subject to being called into federal service." (*Ibid.*) Appellant concedes that a National Guard member who loses federal recognition is not eligible for federal pay.

The parties to this appeal disagree whether and in what capacity an officer may serve in CAARNG absent federal recognition. Appellant contends federal recognition is not required for a state appointment. Respondents, in contrast, contend that "[f]ederal authority governs the determination of who may be employed by CAARNG," and that, irrespective of state law, federal law mandates that an officer cannot serve in CAARNG without federal recognition. Because we conclude *post* that federal regulations *as incorporated into California law* justified appellant's separation, we need not and do not decide whether federal law provides an independent basis for separation.

**B.    Applicable federal regulations**

### 1.    *NGR No. 635–102*

The parties do not dispute that the selective retention process applied to appellant was governed by the version of NGR No. 635–102 effective July 1, 1988.  All references in this opinion to NGR No. 635–102 are to the 1988 version.

NGR No. 635–102 "prescribes policies and procedures for establishing and conducting selection boards used in the [Army National Guard] program for selective retention of officers and warrant officers beyond 20 years of qualifying service for retired pay."  (NGR No. 635–102, subd. (1).)  Among the stated goals for the selective retention program is "[e]nsuring that only the most capable officers are retained beyond 20 years of qualifying service for assignment to the comparatively few higher level command and staff positions."  (*Id.*, subd. (3)(a).)  The regulation directs that "[s]election boards will be convened in each State annually." (*Id.*, subd. (4).)  Officers being considered for retention may not appear before the selection board in person, but may submit a letter to the board "inviting attention to any matter of record concerning themselves."  (*Id.*, subd. (8)(d)(1), (2).)

After a selection board convenes and issues a report, the Adjutant General may "(a) [a]pprove the report in its entirety[;] [¶]  (b) [r]emove an officer's name from the nonselect list and place it on the select list for retention for 1 or 2 years[; or]  [¶]  [m]odify the select list to change an officer from a 1–year retention to a 2–year retention."  (NGR No. 635–102, subd. (5)(j)(1)(a) – (c).)  The Adjutant General may only modify the select list in an officer's favor; the Adjutant General may not modify the list to remove an officer selected for retention, or change an officer's retention period from two years to one year.

(*Id.*, subd. (5)(j)(2).)  The Adjutant General may also disapprove the report in its entirety and direct the board to reconsider all cases.  (*Id.*, subd. (5)(j)(3).)

The regulation states that an officer who loses federal recognition as a result of the selective retention process becomes a member of the Army Reserve, cross-referencing 10 United States Code section 3352.  (NGR No. 635–102, subd. (7)(a).)  10 United States Code section 3352 has since been renumbered 10 United States Code section 12213; it states, in relevant part, "an officer of the Army National Guard of the United States whose Federal recognition as a member of the Army National Guard is withdrawn becomes a member of the Army Reserve.  An officer who so becomes a member of the Army Reserve ceases to be a member of the Army National Guard of the United States."  (10 U.S.C. § 12213(b).)

### 2.    *NGR No. 635–100*

NGR No. 635–100 is entitled "Termination of Appointment and Withdrawal of Federal Recognition."  The parties do not dispute that the version of the regulation applicable to appellant is dated September 8, 1978, and all references to the regulation in this opinion are to that version.

NGR No. 635–100 "prescribes the policies, criteria and procedures governing the separation of commissioned officers of the Army National Guard."  (NGR No. 635–100, subd. (1).)  It states that "[t]he termination of an officer's appointment in the Army National Guard is a function of the State," whereas "[t]he withdrawal of Federal recognition of an officer is a function of the Chief, National Guard Bureau, acting for the Secretary of the Army."  (*Id.*, subd. (2)(a)–(b).)

13

Subdivision (5)(a) of NGR No. 635–100 lists the "criteria" for "termination of state appointment." (Capitalization, boldface, and italics omitted.) It states, "Unless contrary to State law and regulations, the appointment of an Army National Guard officer should be terminated for the reasons listed below. If termination of appointment is contrary to State law [a]nd regulations, the Chief, National Guard Bureau, will be notified in advance and Federal recognition will be withdrawn." (NGR No. 635–100, subd. (5)(a).)

NGR No. 635–100 lists 26 bases under subdivision (5)(a) for terminating an officer's state appointment. The order separating appellant from state service cited NGR No. 635–100, subdivision (5)(a)(8) as authority. That subdivision directs that an officer's state appointment should be terminated "[u]pon [the officer] becoming a member of the Army Reserve." (*Id.*, subd. 5(a)(8).) Under 10 United States Code section 12213(b) and NGR No. 635–102, subdivision (7)(a), the transfer to the Army Reserve was automatic once appellant lost federal recognition as a result of the selective retention process.

The trial court concluded that appellant also was separated under NGR No. 635–100, subdivision (5)(a)(22), which states that an officer's state appointment should be terminated "[a]s a result of failure of selective retention (NGR No. 635–102)." The trial court found CAARNG implicitly invoked this provision by referencing in the order appellant's loss of federal recognition. Appellant does not dispute on appeal that CAARNG purported to separate him pursuant to NGR No. 635–100, subdivision (5)(a)(22) in addition to subdivision (5)(a)(8).[5]

---

[5] Plaintiff claims CAARNG's stated or implicit reasons for his separation were pretextual, and disputes that a selective

14

## I. The *Feres* Doctrine Does Not Bar Appellant's Writ Petition

Respondents contend that the *Feres* doctrine precludes judicial review of appellant's separation from CAARNG. This doctrine originally prohibited members of the armed forces from bringing claims under the Federal Tort Claims Act (28 U.S.C. § 2671 et seq.) "for physical injuries that 'arise out of or are in the course of activity incident to service.'" (*Estes v. Monroe* (2004) 120 Cal.App.4th 1347, 1352.) Courts have since expanded it to bar "a wide variety of statutory and constitutional claims" brought by servicemembers against the military. (*Ibid.*) Courts have justified the doctrine "in significant part on the view that the judiciary ought not to intrude in military affairs," and courts have "interpreted [the *Feres* rule] as necessary to avoid the courts' second-guessing military decisions, or impairing military discipline." (*Stauber v. Cline* (9th Cir. 1988) 837 F.2d 395, 398.)

Some federal courts have applied the *Feres* doctrine to bar suits by servicemembers seeking reinstatement, the relief sought by appellant here. (See, e.g., *Speigner v. Alexander* (11th Cir. 2001) 248 F.3d 1292, 1294, 1298 (*Speigner*); *Watson v. Arkansas Nat. Guard* (8th Cir. 1989) 886 F.2d 1004, 1005 (*Watson*); but see *Jorden v. National Guard Bureau* (3d Cir. 1986) 799 F.2d 99, 109 [*Feres* and progeny did not bar National Guard officer's claim for reinstatement].)

---

retention board actually convened and rejected him or that he transferred to the Army Reserve. We address these arguments in Part III of our Discussion section, *post*.

Those courts recognize, however, that the *Feres* doctrine does not bar facial constitutional challenges to military regulations or statutes. (See *Speigner*, *supra*, 248 F.3d at p. 1298; *Watson*, *supra*, 886 F.2d at p. 1010.) The United States Supreme Court has heard, for example, constitutional challenges to military dress codes (*Goldman v. Weinberger* (1986) 475 U.S. 503), all-male draft registration requirements (*Rostker v. Goldberg* (1981) 453 U.S. 57), and military benefits statutes that discriminated against women (*Frontiero v. Richardson* (1973) 411 U.S. 677).

Similarly, the California Court of Appeal has considered a state constitutional challenge to enforcement of the federal "Don't Ask, Don't Tell" policy regarding the sexual orientation of servicemembers. (*Holmes*, *supra*, 90 Cal.App.4th 297.)

As the Eighth Circuit said in *Watson*, "There is a vast difference between judicial review of the constitutionality of a regulation or statute of general applicability and judicial review of a discrete military personnel decision. In the first instance, a legal analysis is required; one which courts are uniquely qualified to perform. The second involves a fact-specific inquiry into an area affecting military order and discipline and implicating all the concerns on which *Feres* [and progeny] are premised." (*Watson*, *supra*, 886 F.2d at p. 1010.)

In the instant case, appellant has brought, in essence, a facial constitutional challenge. He does not dispute the particular decision not to retain him, but rather whether NGR No. 635–100, a federal regulation, provides a constitutional basis to separate him from the state National Guard. Resolving that challenge does not require us to intrude into military affairs or second-guess military decisions, but only to analyze

16

constitutional, statutory, and regulatory provisions, analysis for which the courts are well-suited. Thus, even assuming arguendo the *Feres* doctrine may bar certain suits seeking reinstatement, it is inapplicable here.

## II. Appellant Fails To Show The Trial Court Erred In Concluding That CAARNG Properly Separated Appellant Based On Federal Regulations Incorporated Into State Law

The trial court concluded that subdivisions (5)(a)(8) and (5)(a)(22) of NGR No. 635–100 had been incorporated into California law under the Military and Veterans Code. Therefore, the selective retention board's decision not to retain appellant for federal service, and his resulting transfer to the Army Reserve, provided bases for CAARNG to separate appellant from state military service as well.

Appellant's challenges to this conclusion fall into two categories. First, appellant contends that principles of federalism, along with the United States Constitution's express reservation of states' rights concerning the militia, bar a state from incorporating federal law governing the appointment and termination of state military officers. Second, he contends that to construe the Military and Veterans Code to incorporate federal regulations governing appointment and termination of state officers is inconsistent with the statutory language and legislative intent of that Code. Appellant's challenges therefore require us to address two questions: (1) Can the Legislature incorporate the federal regulatory provisions at issue here, and (2) has the Legislature done so? The trial court answered both in the affirmative; we conclude appellant shows no basis for reversal.

### A. States may incorporate federal law regarding appointment and termination of National Guard officers

#### 1. The Militia Clauses of the U.S. Constitution

Article I, Section 8, Clauses 15 and 16 are known as the "Militia Clauses" of the United States Constitution. (*Perpich v. Department of Defense* (1990) 496 U.S. 334, 337, fn. 3 (*Perpich*).) The First Militia Clause states that Congress has the power "[t]o provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions." (U.S. Const., art. 1, § 8, cl. 15.) The Second Militia Clause states that Congress has the power "[t]o provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress." (*Id.*, art. 1, § 8, cl. 16.) The Second Militia Clause is the primary basis of appellant's constitutional argument in the instant case.

A brief review of the genesis of the Second Militia Clause is instructive on the issues before us.[6] As one commentator has

---

[6] We note the excellent discussions of the constitutional underpinnings of the Militia Clauses in Stirling and Lovato, *With All Due Respect, Mr. President, We're Not Going To Follow That Order: How and Why States Decide Which Federal Military Rules Apply to State National Guard Personnel* (2017) 22 Tex. Rev. L. & Pol. 95 (Stirling & Lovato); Bahar, *The Presidential Intervention Principle: The Domestic Use of the Military and the Power of the Several States* (2014) 5 Harv. Nat. Sec. J. 537 (Bahar); and

summarized the conflict among the Founding Fathers, "[i]n the . . . militia debate was the fight for the heart of the new nation." (Bahar, *supra*, 5 Harv. Nat. Sec. J. at p. 545.) That debate centered around whether the new nation should rely on the existing state militias or a federal standing army for protection against foreign threats. George Washington particularly noted the threats of "native tribes and British and Spanish colonies surround[ing] the fledging United States." (*Id.* at p. 546.)

Those Founding Fathers arguing in favor of relying on state militias remembered all too well the threat to liberty the British army had imposed during colonial times. "[T]he revolutionary experience resurrected an old ideal of the militia as the guardian of liberty, ever ready to defend against the abuses of a tyrannical government and its standing army of professional soldiers. With independence at hand, and attention turned to securing the emerging nation, it was hard to shed this romanticism of the militia and the notion that it was dangerous for the government to have its very own army, to control a force apart from the people themselves." (Mazzone, *supra*, 53 UCLA L.Rev. at pp. 74–75.) Thus Luther Martin argued in favor of the "local expertise" of state militias and their check on "the power of the President and a national army." (Bahar, *supra*, 5 Harv. Nat. Sec. J. at p. 545.) "Theirs was the ideal of Cincinnatus, dropping the plow for the sword . . . only when necessary." (*Ibid.*)

Those Founding Fathers on the other side of the debate were concerned about the effectiveness of a confederation of state

---

Mazzone, *The Security Constitution* (2005) 53 UCLA L.Rev. 29 (Mazzone).

militias.  John Jay commented on, among other impracticalities, the absence of a commander, terms of payment, and a means to settle inter-militia disputes.  (Bahar, *supra*, 5 Harv. Nat. Sec. J. at p. 547.)  Jay argued in favor of a strong national government, "which could institute 'uniform principles' and render the individual state militias 'more efficient than if divided into thirteen . . . independent bodies.' " (*Ibid.*, alteration in original.)

In Federalist No. 29, entitled "Concerning the Militia," Alexander Hamilton similarly emphasized the need for uniform rules:  "It requires no skill in the science of war to discern that uniformity in the organization and discipline of the militia would be attended with the most beneficial effects, whenever they were called into service for the public defence.  It would enable them to discharge the duties of the camp and of the field with mutual intelligence and concert; an advantage of peculiar moment in the operations of an army:  And it would fit them much sooner to acquire the degree of proficiency in military functions, which would be essential to their usefulness.  This desirable uniformity can only be accomplished by confiding the regulation of the militia to the direction of the national authority." (The Federalist No. 29, p. 181 (J. Cooke ed. 1961); see Stirling & Lovato, *supra*, 22 Tex. Rev. L. & Pol. at p. 101.)

In the end, the Second Militia Clause was a compromise among these competing views.  "States agreed to grant certain aspects of their power over their militias (now called national guards) to the federal government in exchange for federal armaments and pay." (Stirling & Lovato, *supra*, 22 Tex. Rev. L. & Pol.  at p. 99; see *Perpich*, *supra*, 496 U.S. at p. 340.)

### 2. The Second Militia Clause and principles of federalism do not bar a state from incorporating federal law concerning appointment and termination of appointment of National Guard officers

The thrust of appellant's constitutional argument is that it is inconsistent with the Second Militia Clause for a state to allow a federal process such as a selective retention board to dictate who may serve as a state military officer.

We see no inconsistency. The Second Militia Clause protects the states' right to appoint militia officers. We accept for purposes of this appeal that a corollary of the states' right to appoint officers is the power to terminate those appointments. Appellant cites no authority suggesting that a state cannot exercise that right by looking to a state officer's federal status to determine whether to retain or separate that officer. The Second Militia Clause might bar a federal statute or regulation from *mandating* that a state terminate an officer's appointment upon failure of federal selective retention, but nothing prevents a state from deciding of its own accord to terminate officers' appointments on that basis. Under those circumstances, the state retains the ultimate authority to decide who serves in its National Guard, consistent with the Second Militia Clause. (See Stirling & Lovato, *supra*, 22 Tex. Rev. L. & Pol. at p. 116 ["Federal military rules are rightly understood as suggestive rather than prescriptive. States have the final say as to federal rules' applicability to the [National] Guard forces under state control"].)

Appellant also cites no authority suggesting that a state cannot adopt federal criteria by incorporation rather than by

enacting identical state laws.  (See, e.g., *Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1087 [Health and Safety Code incorporates food labeling regulations and amendments adopted pursuant to Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 301 et seq.)].)  Indeed, a requirement that states wishing to adopt federal law must do so by enacting identical state laws would be unduly cumbersome.

Appellant's cited cases, all of which address the federal government's power to compel certain actions by states, are inapposite.  In *Gregory v. Ashcroft* (1991) 501 U.S. 452 (*Gregory*), the U.S. Supreme Court held that a federal statute prohibiting age discrimination did not override a state constitutional provision mandating that state judges retire by age 70, in part because to conclude otherwise "would upset the usual constitutional balance of federal and state powers." (See *id.* at pp. 455, 460, 473.)  *Gregory* considered whether federal authority trumped state authority; it did not suggest that a state could not under its own authority adopt federal law as its own, or use federal criteria to guide state decisions, the question at issue in the instant case.

*New York v. U.S.* (1992) 505 U.S. 144 (*New York*) invalidated a provision of a federal law requiring states either to assume ownership of radioactive waste generated within their borders or enact regulations "according to the instructions of Congress." (*Id.* at p. 175.)  The invalid provision " 'commandeer[ed] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.' " (*Id.* at p. 176.)  Again, this case considered whether Congress could compel states to regulate according to

22

federal requirements; it did not bar states from voluntarily incorporating federal regulations or criteria into state law.

*Printz v. U.S.* (1997) 521 U.S. 898 (*Printz*) held that Congress could not compel state law enforcement officials to conduct background checks pursuant to a federal firearm regulatory scheme. (*Id.* at p. 933.) The Supreme Court held that just as "Congress cannot compel the States to enact or enforce a federal regulatory program," Congress also "cannot circumvent that prohibition by conscripting the State's officers directly." (*Id.* at p. 935.) *Printz* has no bearing on the instant question whether a state may require its own officials to follow federal criteria.[7]

Appellant notes that the Supreme Court in *New York* rejected an argument that the challenged statutory provision was constitutional because the states had consented to its enactment; "Where Congress exceeds its authority relative to the States, . . . the departure from the constitutional plan cannot be ratified by the 'consent' of state officials." (*New York, supra,* 505 U.S. at p. 182.) Appellant argues that, under *New York*, California could not "consent[ ] to the exercise of federal power over the appointment of California's militia officers." Incorporation of federal regulations is not "consent" to be governed by federal power, however; instead, it is a decision by state authorities to exercise state power according to the same regulatory criteria applied by federal authorities. The mandate comes from the state, not the federal government.

---

[7] Plaintiff claims that he cited *Gregory*, *New York*, and *Printz* before the trial court but the trial court failed to consider the cases in its ruling. Assuming this is so, plaintiff suffered no prejudice because the cases are inapposite.

To the extent appellant is claiming that the provisions of NGR No. 635–100 under which he was separated from CAARNG violate the Second Militia Clause, and therefore cannot be incorporated into state law, we disagree. NGR No. 635–100 does not purport to mandate whom states appoint or terminate as officers, and expressly recognizes states' authority in this regard. It acknowledges that "[t]he termination of an officer's appointment in the Army National Guard is a function of the State." (NGR No. 635–100, subd. (2)(a).) It further provides that a state National Guard should not terminate an officer's state appointment under the regulation if "contrary to State law and regulations." (*Id.*, subd. (5)(a).) Thus, consistent with the Second Militia Clause, states retain their constitutional authority to appoint and terminate the appointments of National Guard officers.

We also reject appellant's assertion that NGR No. 635–102 impermissibly "transfer[s] appointment authority from our legislature to our Adjutant General," who is empowered under NGR No. 635–102 to modify or disapprove the selective retention board's decision. (NGR No. 635–102, subd. (5)(j).) Accepting for the sake of argument that the Adjutant General acts in a state, rather than federal, capacity when reviewing the board's decision, nothing prevents the Legislature from delegating appointment authority to the Adjutant General, either expressly or through incorporation of NGR No. 635–102.

24

**B.    Appellant fails to show the trial court erred in concluding that the Military and Veterans Code incorporates NGR No. 635–100, subdivisions (5)(a)(8) and (5)(a)(22)**

Having concluded that a state may incorporate federal law regarding the appointment and termination of appointments of state National Guard officers, we now address the question of whether the Legislature has done so.

The Military and Veterans Code[8] governs the California Military Department, including the National Guard.  (See §§ 50, 51.)  Numerous provisions of the Code reference or incorporate federal law.  Section 100 provides, "The intent of this code is to conform to all acts and regulations of the United States affecting the same subjects, and all provisions of this code shall be construed to effect this purpose."  Section 101 provides, "All acts of the Congress of the United States relating to the control, administration, and government of the Army of the United States and the United States Air Force and relating to the control, administration, and government of the United States Navy, and all rules and regulations adopted by the United States for the government of the National Guard and Naval Reserve or Naval Militia, so far as the same are not inconsistent with the rights reserved to this State and guaranteed under the Constitution of this State, constitute the rules and regulations for the government of the militia."

The enacting legislation for the Military and Veterans Code, including sections 100 and 101, made clear an intent to

---

[8]  Further unspecified statutory citations are to the Military and Veterans Code.

25

incorporate not only existing federal law, but future federal enactments as well: "Whenever any reference is made . . . to any law of . . . the United States or to . . . the rules and regulations of the United States Army or Navy departments, such reference shall apply to all amendments and additions thereto now or hereafter made."[9] (Stats. 1935, ch. 389, § 9.)

Although the trial court did not discuss the issue expressly, it appears the trial court implicitly concluded that NGR Nos. 635–100 and 635–102 are "rules and regulations adopted by the United States for the government of the National Guard," and thus within the subject matter incorporated under section 101. Appellant does not contest this implicit finding on appeal, nor do the parties address it. We thus deem the issue

---

[9] Although not raised in his briefing, at oral argument plaintiff referred to dictum from a 1937 California Supreme Court case stating, "It is, of course, perfectly valid to adopt *existing* statutes, rules, or regulations of Congress or another state, by reference; but the attempt to make *future* regulations of another jurisdiction part of the state law is generally held to be an unconstitutional delegation of legislative power." (*Brock v. Superior Court* (1937) 9 Cal.2d 291, 297.) We have found no case in which the Supreme Court invalidated a statute on this basis. In any event, the principle is inapt in the context of the National Guard, which depends on conformance with federal criteria to maintain federal funding. (See *Stirling, supra,* 18 Cal.App.5th at p. 1152; *Charles v. Rice* (1st Cir. 1994) 28 F.3d 1312, 1315–1316 (*Charles*) ["States that fail to comply with federal regulations risk forfeiture of federal funds allocated to organize, equip, and arm state Guards"].) Such conformance would be impracticable were we to require the Legislature or Adjutant General continually to amend state law to conform to changes in federal law.

conceded and express no opinion on it.[10]  Appellant instead
challenges the trial court's conclusion that the provisions of
NGR Nos. 635–100 and 635–102 applied to appellant "are not
inconsistent with the rights reserved to this State."  (§ 101.)
On that issue we agree with the trial court.

Among "the rights reserved to this State" (§ 101) is the
right reserved under the Second Militia Clause to appoint
National Guard officers.  Thus, read alone, section 101 arguably
suggests that the Legislature did not intend to incorporate
federal law insofar as it related to the appointment (and, by
extension, termination) of state National Guard officers.  Other
provisions of the Military and Veterans Code, however, make
clear that the Legislature intended to incorporate federal law
governing appointments as well.  Section 220 provides,
"All officers shall be commissioned by the Governor.  All
appointments of officers shall be made and all vacancies shall be
filled *in the manner provided by the laws and regulations of the
United States Army and United States Air Force*."  (§ 220, italics

---

[10]  We note that in regard to "acts of the Congress," as
opposed to "rules and regulations," section 101 incorporates not
only those acts relating to the "government" of the federal
military, but also acts relating to "control" and "administration"
of the military.  This arguably suggests that the term
"government" as used in section 101 has a specific and limited
meaning, and would not include, at the very least, regulations
pertaining to the control and administration of the National
Guard.  Because the parties do not address or attempt to define
"government" as used in section 101, and plaintiff has not
challenged the trial court's implicit conclusion that the regulatory
provisions at issue concern "the government of the National
Guard," we leave that question for another day.

added.)  Section 222 provides, "Persons to be commissioned in the National Guard shall be selected from *those eligible for federal recognition in accordance with Army and Air National Guard Regulations promulgated from time to time by the Department of the Army or the Department of the Air Force of the United States* and from former commissioned officers of the United States Army, United States Air Force, United States Navy, or any reserve component thereof, who were honorably separated therefrom but are no longer eligible for federal recognition." (§ 222, italics added.)

These broadly stated incorporation provisions indicate an intent by the Legislature to harmonize state law with federal law regarding the National Guard, even in regard to the power of officer appointments constitutionally reserved to the states.  It is unsurprising the Legislature should do so given the importance of maintaining federal recognition of those in state service in order to receive federal funding.  (See *Stirling*, *supra*, 18 Cal.App.5th at p. 1152; *Charles*, *supra*, 28 F.3d at pp. 1315–1316.)

Appellant argues our reading of section 220 broadly to incorporate federal criteria for the appointment of officers is inconsistent with legislative history.  He asserts that section 220 "consolidated six previous laws (incorporating standard for examinations on 'knowledge of military affairs,' medical fitness, etc.) that were restated in a general manner intended as a catchall for those specific issues harmonized with [section] 101." (Boldface omitted.)  To the extent appellant is suggesting that we must read section 220 to incorporate only the requirements of earlier laws it replaced ignores the plain language of the statute, which broadly incorporates federal law without regard to specific criteria.

Appellant cites a 1948 opinion from the California Attorney General, which overruled an earlier Attorney General opinion concluding that federal regulations concerning assignment of National Guard officers were incorporated into California law under section 101. (11 Ops.Cal.Atty.Gen. 253, 262 (1948).) As summarized in the 1948 opinion, the earlier opinion addressed whether the Governor could assign a federally recognized state National Guard officer to an inactive list without the officer's consent. (*Ibid.*) The earlier opinion answered in the negative: Federal regulations, incorporated into state law under section 101, provided that an officer must apply for such a transfer. (11 Ops.Cal.Atty.Gen., at p. 262.)

The 1948 opinion disagreed with the earlier opinion's "assumption, made without a consideration of the authorities, that the federal regulations concerning federal recognition and commissions in the National Guard of the United States are controlling because section 101 of the Military & Veterans Code adopts the applicable federal laws and National Guard regulations. This assumption is incorrect. To permit federal regulations to govern the appointment and assignment of officers of the State Militia would be 'inconsistent with the rights reserved to this state.' " (11 Ops.Cal.Atty.Gen., at p. 262.) The 1948 opinion concluded that "under the specific provisions of section 101, the matter of the appointment and assignment of officers is not governed by the federal regulations applicable to the National Guard." (11 Ops.Cal.Atty.Gen., at p. 262.)

The 1948 opinion's conclusion that the Military and Veterans Code does not incorporate federal regulations concerning appointment of officers is in tension with section 220's directive that "[a]ll appointments of officers shall be made . . . in

29

the manner provided by the laws and regulations of the United States Army and United States Air Force." Indeed, the opinion did not discuss section 220. In light of section 220's language expressly incorporating federal law on the subject of officer appointments, we decline to adopt the 1948 opinion's conclusion.[11]

Appellant also cites *Santin v. Cranston* (1967) 250 Cal.App.2d 438, which held that, although the Military and Veterans Code incorporated "federal laws, rules and regulations" for the purpose of "measur[ing] pay during service and the allowances to be paid after retirement," it did not incorporate federal case law interpreting the effect and status of a pension, specifically whether it was vested or not. (*Santin*, at p. 443.) *Santin* has no bearing here, where the question is whether state law incorporates federal regulations, not federal case law.

Appellant argues that Military and Veterans Code sections 227 to 239 are the exclusive means by which an officer may be separated from the National Guard, contending that because the Legislature has specified particular grounds for separation, the Legislature could not have intended also to adopt additional grounds under federal law.

We are not persuaded that, in enacting specific provisions governing separation of officers, the Legislature thereby intended those express provisions to be exclusive; indeed, this interpretation is in tension with the broad incorporation of federal law, which necessarily includes provisions not specified under state law. Nevertheless, to the extent federal law is

---

[11] We express no opinion regarding the 1948 opinion's conclusion that federal regulations do not govern the assignment, as opposed to appointment, of National Guard officers.

30

inconsistent with express provisions of state law governing the appointment and separation of officers, state law must control under the Second Militia Clause.  (See 64 Ops.Cal.Atty.Gen. 750, 753 (1981) [§ 101 incorporates federal law within its subject matter "only if such federal law is 'not inconsistent' with pertinent state law"].)

Like the trial court, however, we see no inconsistency between the federal regulatory provisions applied to appellant and the Military and Veterans Code.[12]  Notably, state law contains no selective retention process upon which the federal process intrudes.  Appellant argues section 234, providing that the Governor "[a]t any time" may appoint an "efficiency board" to evaluate the "moral character, capacity, and general fitness for service of an officer," is equivalent to a selective retention process.  Section 234 provides a mechanism to remove officers for cause whenever the Governor deems it necessary; it is not equivalent to the federal selective retention process, in which officers otherwise fit for duty are honorably discharged upon reaching 20 years of service.

Section 232 lists grounds upon which an officer's commission may be vacated, including "by death, by acceptance by proper authority of resignation, by discharge on account of inefficiency, for physical disqualifications, when dropped from the rolls for an absence without leave for three months, by discharge to accept a commission in the United States Army, United States Air Force, United States Navy, or a reserve component thereof,

---

[12] We do not decide whether other provisions in NGR No. 635–100 not applied to plaintiff are inconsistent with the Military and Veterans Code.

31

when transferred to the United States Army Reserve upon the expiration of six months as a member of the Inactive National Guard, upon a finding by the Adjutant General that the officer is a security risk as a result of subversive activity, for personal traits of character, or by dismissal pursuant to sentence of a general court-martial."[13] (§ 232.) Again, given the broad incorporation of federal law under sections 100, 101, 220, and 222, we do not interpret this list as exclusive, and therefore do not read it as inconsistent with separation as a result of a federal selective retention determination.

The other provisions in sections 227 through 239 that relate to involuntary separation of officers, some of which overlap with section 232, neither resemble nor conflict with the federal selective retention process. Section 227 mandates retirement upon reaching age 64; section 229 governs retirement for incapacity; section 235 permits discharge for physical unfitness; section 236 permits discharge for an absence without leave; and section 237 permits dismissal upon sentence of a general court-martial.

Appellant cites legislative history indicating that an earlier version of section 232 included as a ground for vacation of commission "reversion to reserve officer of the Army or Air Force status after termination of federal recognition." (Former § 232, enacted by Stats. 1955, ch. 728, § 1.) The Legislature eliminated this ground from section 232 in 1963. (See Stats. 1963, ch. 121,

---

[13] The version of section 232 in effect at the time of plaintiff's separation also authorized vacation of commission "by permanent change of residence to a place outside this State," and lacked the word "for" before "personal traits of character." (Former § 232, enacted by Stats. 1963, ch. 121, § 1.)

§ 1.)  Appellant argues we cannot construe the Military and Veterans Code impliedly to contain a provision that the Legislature expressly has removed.  (See *People v. Soto* (2011) 51 Cal.4th 229, 245 ["We cannot interpret [a statutory section] to reinsert what the Legislature intentionally removed"].)

The trial court found, however, and appellant does not dispute on appeal, that an officer who has lost federal recognition may, upon application and qualification, serve in the State Military Reserve, an entity "distinct from the National Guard." (§ 550; see also § 142, subd. (e)(2) [listing among those deemed on "state active duty" those individuals "honorably separated from service with . . . the federally recognized National Guard of any state . . . with current membership in the State Military Reserve"].)  Although the Legislature by amending section 232 has permitted individuals to remain in state service despite loss of federal recognition, it does not follow that the Legislature intended that service to be in CAARNG, as opposed to in the State Military Reserve or some other entity within the militia. (See *Holmes*, *supra*, 90 Cal.App.4th at p. 306 [noting finding in related federal case that the appellant held " 'an officer position in the state and United States reserve groups that does not require federal recognition and is not subject to being called into federal service' "].)  The amendment to section 232 therefore is not inconsistent with our conclusion that the Military and Veterans Code may incorporate a federal provision requiring separation from CAARNG upon failure of selective retention and loss of federal recognition.

Appellant invokes principles of statutory construction to support his argument.  He argues that " 'the expression of certain things in a statute necessarily involves exclusion of other things

not expressed,' " and " 'a specific enactment governs over a more general one.' " Appellant contends that the specific provisions of sections 227 through 239 should prevail over the general provisions of sections 100 and 101.

These principles have no application here. To the extent the Military and Veterans Code has incorporated the specific provisions of NGR Nos. 635–100 and 635–102 into California law, we must read those federal provisions as if they expressly were written into the Military and Veterans Code, alongside the specific provisions of sections 227 through 239. Thus, contrary to appellant's position, the federal provisions are both " 'expressed' " and as specific as the provisions of sections 227 through 239.

We also reject appellant's premise that because some of the express provisions regarding officer appointment and removal in the Military and Veterans Code were enacted after section 101, the latter statutes must prevail. Had the legislature intended those later provisions to supersede applicable federal law, it could have so specified, including by amending sections 100 and 101 to narrow the scope of incorporation. Having not done so, we cannot agree that the express provisions of the Military and Veterans Code were intended to limit the incorporation of federal law to the extent that law is not inconsistent with state law.

Appellant argues the Legislature could not have intended state law concerning officers to track federal law because this "would require our Legislature to authorize a massive increase in funding and personnel to newly duplicate a multitude of functions . . . obviously intended for the much larger federal military." At oral argument, appellant argued that interpreting the Military and Veterans Code broadly to incorporate federal law would render meaningless any provisions of the Code that

deviate from federal law. To be clear, we are not holding that the Military and Veterans Code incorporates all federal law without limitation, nor do we suggest that our holding invalidates any existing provisions of state law, a question we need not address. In this case, however, in which the federal regulatory provisions at issue are "not inconsistent with the rights reserved to this State and guaranteed under the Constitution of this State" (§ 101), and appellant has not disputed the trial court's implicit finding that the regulatory provisions were "adopted by the United States for the government of the National Guard" (*ibid.*), appellant fails to show the trial court erred in deeming the provisions incorporated into state law.

## III. Appellant Has Failed To Show Prejudice From Any Of The Trial Court's Purported Procedural Errors

Appellant claims the trial court committed numerous procedural and evidentiary errors. He objects that the trial court did not allow live testimony or cross-examination, instead relying on declarations. He asserts that the trial court failed to rule on his objections and refused to grant his requests for judicial notice. He claims the trial court's findings of fact were erroneous and indicate the court did not fairly consider his evidence. He argues that one of respondents' declarants, Chief Warrant Officer Anthony C. Williamson, lacked personal knowledge of the matters to which his declaration pertained, and the trial court wrongly relied on Williamson not only for incorrect assertions of fact but assertions of law as well.

Many of appellant's claims of error are not well taken. We note that a trial court has the discretion to decide a writ petition on declarations and other documents as opposed to oral testimony. (*American Federation of State, County & Municipal*

*Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 263.)  We further note that appellant's written objections, which specifically targeted Williamson's testimony, were untimely, filed several days after the deadline set by the trial court, and thus the trial court properly declined to consider them.  Contrary to appellant's assertion, the record indicates the trial court granted many of his requests for judicial notice.

Appellant also fails to explain how these purported errors prejudiced him.  At minimum, appellant was required to show a " 'reasonable probability that in the absence of the [purported] error, a result more favorable to the appealing party would have been reached.' " (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 614.)  In his briefing, appellant makes general claims of prejudice, and identifies some specific examples of purported errors by the trial court, but never explains how those errors affected the outcome of his case.  These conclusory assertions of prejudice are insufficient.  (See *id.* at p. 615.)

With the assistance of oral argument, however, we have identified two issues of disputed fact that merit further discussion, although we conclude neither justifies reversal.

A.    **Substantial evidence supported the trial court's finding that appellant failed selective retention**

Appellant disputes the validity of the memorandum informing him he had failed selective retention, claiming there was no evidence a selective retention board had ever met to review his personnel file.  Appellant contends the California Military Department manufactured the document to deceive him into believing that the federal government had withdrawn his federal recognition.  The trial court in its ruling did not address this claim expressly, but we may presume it rejected it given its

36

ruling that CAARNG properly separated appellant on the basis of failure of selective retention.

The trial court's conclusion is supported by substantial evidence. Williamson, who was responsible for CAARNG's Office of Personnel Management Branch, submitted a declaration stating that the selective retention board had reviewed appellant's record, and attached the order from Haskins convening the selective retention board and the memorandum informing appellant he had failed selective retention. Although appellant disputes the claims in Williamson's declaration, the trial court as the finder of fact was entitled to determine the validity of the documents and credibility of Williamson's testimony, and we will not disturb that determination on appeal. (See *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1027 [when reviewing a " ' "judgment based on affidavits or declarations," ' " a reviewing court " ' "defer[s] to [the trial court's] determination of credibility of the witnesses and the weight of the evidence" ' "].)

Appellant contends that Williamson lacked personal knowledge of the matters in his declaration, and that the trial court erred in not acknowledging appellant's objections on that and other bases. As discussed, however, appellant's written objections were untimely. Appellant claims his untimely objections were "restatements" of earlier objections, but does not identify where in the record he raised the earlier objections. (See *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 [appellant has duty to "refer us to the portion of the record supporting his contentions on appeal"].)

Our own search reveals that appellant in his second supplemental brief before the trial court claimed that, according

37

to "records," Williamson was not in California at the time of the selective retention proceeding and thus could not have personal knowledge of it. In support, appellant cited to his written objections, at the time still unfiled (and ultimately untimely filed). Accepting for the sake of argument that this was a proper objection, Williamson as a personnel officer nonetheless could have personal knowledge of the records of the selective retention proceeding (such as the convening order and the memorandum informing appellant of the result), and we have not located, nor has appellant identified on appeal, any timely objection to Williamson authenticating those records. Appellant also does not explain why those documents cannot constitute official records establishing that the selective retention proceeding occurred (see Evid. Code, § 1280), and has not directed us to any timely objection he may have raised to the admissibility of those documents. In the absence of objection to those documents, we cannot conclude the trial court erred in relying on them.

## B. The trial court did not err in concluding that appellant transferred to the Army Reserve

Consistent with his contention that he was never rejected by a federal selective retention board, appellant also denies that he ever transferred to the Army Reserve, which was CAARNG's stated basis for his separation.

As discussed, substantial evidence supports the trial court's conclusion that appellant failed federal selective retention. Having reached that conclusion, the trial court also could conclude that, under 10 United States Code section 12213(b) and NGR No. 635–102, subdivision (7)(a), appellant's transfer to the Army Reserve was automatic once he lost his federal recognition. Even assuming appellant for some reason did not transfer to

38

the Army Reserve so as to justify his separation under NGR No. 635–100, subdivision (5)(a)(8), CAARNG could still separate him under subdivision (5)(a)(22) for failure of selective retention, which is an alternative basis to affirm the trial court's decision to deny the writ.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.